WILLIAM MARTIN ET AL. *v.* ROBERT H. PERKINS.

1. WILLS. *How proved, after probate once refused.*
    When a writing purporting to be a last will and testament has been offered for probate in the "common form," under sect. 1099 of the Code of 1871, and the probate refused because of the insufficiency of the proof, such refusal does not preclude the devisees or legatees from subsequently presenting the writing for probate, in a more formal and solemn manner, and supplying full proof of its character and establishing its validity.

2. SAME. *Who competent to prove. Mental condition of testator.*
    Upon the *ex parte* exhibition of a writing to be probated as a will, in "common form," under our statute, the subscribing witnesses must be examined, and they are the only competent witnesses to prove the signing, publishing, and attestation of the writing; but others are equally competent to testify as to the mental condition of the testator, the only difference being that the subscribing witnesses may express their opinions as to his mental condition, while other witnesses are confined to a narration of facts. And where the judge, or clerk, is satisfied from the testimony of such other witnesses that the testator had mental capacity to make the will, it is his duty to allow the same to be probated, notwithstanding the subscribing witnesses may testify against the capacity of the testator.

3. SAME. *Mental condition. Must be proved.*
    Our statute upon the probate of wills, when its various provisions are collated and construed together, requires that some direct proof of a sound and disposing mind in the testator shall be made, on the probate of a will in "common form."

APPEAL from the Chancery Court of Yalobusha County.

Hon. A. B. FLY, Chancellor.

The case is stated in the opinion of the court.

*Golladay & Freeman,* for the appellants.

1. It is not necessary, in the "ordinary probate of a will," or the probate in common form, under our statutes, that the attesting witnesses should depose to the sanity of the testator. The presumption of sanity dispenses with proof thereof. 2 Greenl. on Ev., sect. 689; *Payne* v. *Banks,* 32 Miss. 292; 1 Jar. on Wills, 72; Redf. on Wills, 30, 40, 42, 15, note 21. The witnesses are produced to "testify as to the execution." Code 1871, sect. 1117.

2. The matter of the petition of the appellants was not *res adjudicata.* "Any person interested in a will has the

right to apply for probate of it." 1 Jar. on Wills, 217. In contests with reference to the establishment of wills, it is the duty of the chancellor to cause the proper issue to be formed and tried. Code 1871, sect. 1199; *Edwards* v. *Goulding*, 38 Miss. 118.

3. Under the statute, the court should have granted the appellant's petition for an issue *devisavit vel non.* Code 1871, sect. 1199. But as the petition looked to a rehearing, the prayer thereof should have been granted independently of the section of the Code referred to. Redf. on Wills, pt. 2, chap. 1, sect. 5, pt. 10, p. 57.

*George H. Lester*, for the appellee.

1. The court properly refused, at the March term, 1878, to set aside the decree rendered at a former term. The petition of the appellants was correctly dismissed. When a will is presented for probate, the questions presented are: Was the testator of sound and disposing mind? and, Is the will in form, and properly attested? Code 1871, sects. 1098–1100, 2388. A decree upon these questions is conclusive. 1 Greenl. on Ev., sect. 550; 2 *id.*, sect. 672. The testator's sanity at the time of the execution of the will must be proved by him who exhibits the will for probate. There is no presumption of sanity in such case. Code 1871, sect. 1100; 1 Greenl. on Ev., sect. 77.

2. The appellants were not entitled, upon their petition, to an issue *devisavit vel non.* The right to such issue is limited to persons contesting the validity of a will. Code 1871, p. 1099. The appellants are asserting the validity of a will.

*J. R. Armstrong*, on the same side.

If the subscribing witnesses to a will refuse to establish the same, it cannot be legally admitted to probate upon the testimony of other witnesses. *Watson* v. *Pipes*, 3 Geo. 451; *Evans* v. *Evans*, 10 Smed. & M. 402; *Murray* v. *Murphy*, 10 Geo. 214; Code 1871, sects. 1100–1102, 1117; *Hock* v. *Hock*, 6 Serg. & R. 47; *Jackson* v. *Vickary*, 1 Wend. 406. The order refusing to probate was conclusive, and could not

be set aside. *Lay* v. *Kennedy*, 1 Watts & S. 398; *Laughton* v. *Atkins*, 1 Pick. 535; 1 Greenl. on Ev. 518–550.

Simrall, C. J., delivered the opinion of the court.

The agreed record makes this case: M. A. Williams, widow and devisee of Bayles E. Williams, deceased, propounded for probate, in common form, a paper purporting to be the last will and testament of her deceased husband, to the clerk of the Chancery Court, in vacation. The subscribing witnesses declined to make oath before the clerk that the testator, at the time of the execution of the paper, was of "sound and disposing mind and memory," and for that reason the clerk declined to admit the paper to probate and record as the last will and testament of the deceased. At the next succeeding term of the Chancery Court the chancellor confirmed this decision of the clerk at rules. This occurred at the September term, 1877, on the 25th of the month.

At the next term, March, 1878 (25th of the month), the sisters of Bayles E. Williams, deceased, presented a petition to set aside the order of the clerk, and its confirmation at the September term, 1877: (1.) Because the petitioners were not parties to that proceeding. (2.) The order is a nullity, because affirmative proof of sanity is not necessary to be made by the attesting witnesses; sufficient capacity will be presumed. The court overruled the motion, and declined to set the orders aside.

The widow of the deceased had intermarried with R. W. Perkins, and afterward died, without children or descendants of them. Perkins was admitted as a party defendant before the order last referred to was made. After this motion had been overruled, and on the same day, the same petitioners, who claimed to be devisees of the remainder in the real estate after the death of the widow, propounded to the Chancery Court for probate the same paper, as the last will and testament of Bayles E. Williams, deceased.

R. W. Perkins filed elaborate objections, detailing in full all

the anterior proceedings, and insisted that they were a bar to the entertainment of the petition and the relief sought. To this answer the petitioners demurred. It was overruled, and the petition was dismissed. Whereupon, at the same term of the court, the same petitioners presented a formal application — setting out the precedent litigation and orders — for "an issue to be tried by a jury to ascertain whether said writing was a will or not, valid in law." On the demurrer of Perkins, this petition, also, was dismissed.

The principle on which the chancellor, no doubt, made the several rulings recited was, that the refusal of the clerk at rules, on the testimony before him, to probate the will, and the confirmation of that action by the court, precluded any party interested in the will from the further agitation of that subject.

It pertained to the Ecclesiastical Court, in England, to receive proof and establish a will, so far as it disposed of personal estate; but it had no power to establish it as respected real estate, and its probate was not so much as *primâ facie* evidence in a controversy between the heir and devisee.

Our system of laws requires the will to be probated as to both estates, and gives no validity to it until it has been adjudged to be a last will and testament. When it has received that judicial sanction, it cannot be assailed collaterally.

It is provided by sect. 1098 of the Code, that taking proof of wills shall pertain to the Chancery Court. The next section — sect. 1099 — states the mode, viz.: "When any last will and testament is exhibited to be proved, the court, or clerk in vacation, may proceed immediately to take the probate thereof." It may be exhibited by any person. By whomsoever it is presented to the court, the proof may be immediately taken; taken without notice to the heir; taken *ex parte*. It would be strange, and inconsistent with the temper and spirit of our jurisprudence, if what was done in the premises by the court, or clerk in vacation, should be conclusive upon any body, especially the heir. The succeeding portion of the section

givés opportunity to any person, within two years, to *contest* the will, and an issue may be made up and tried.

But there is no express provision allowing a legatee or devisee to have a full and formal investigation of whether the instrument be a valid will and testament, if the court or clerk has refused, on the *ex parte* exhibition of it, to declare it proved. And it must have been for that reason that the chancellor refused the application of the devisees (to which the heir was a party defendant) to give them an opportunity to prove the will on an issue of *devisavit vel non*. The refusal of probate by the clerk, and a confirmation, on his motion, by the court, was conclusive, in the estimation of the court, against the devisees, but was not conclusive against the heir if he choose to contest within two years.

The proof meant in sect. 1099 of the Code is what is called proof " in common form," and was not intended to bind any body interested to controvert it. It cannot be pleaded as " *res adjudicata* " in a direct suit which questions the validity of the will. It would be altogether unreasonable to give an effect to a refusal to admit the instrument to probate, which is denied to a declaration that the instrument has been proved.

The law intends that, before the will shall be conclusively proved and established, the heir shall have an opportunity to show cause against it ; and before proof of it shall be denied altogether, the legatees and devisees shall have the opportunity of full investigation. Sect. 1099 gives the heir the right to make the controversy against the will. In order that the legatees and devisees may have an opportunity to sustain the will, it is only necessary to hold that the rejection of the paper when first exhibited for proof is not *res adjudicata*, and cannot be pleaded in bar by the heir. Ordinarily, the will is exhibited for proof by the executor ; he may be neither legatee nor devisee. It may be offered in court by a bailee, with whom it was deposited for safe-keeping, and *immediately*, without notice to heir or devisee, or any body, the court or clerk shall take the proof. Surely the law does not intend

that the rejection of the paper for insufficient proof shall be conclusive on the devisee who was not present to cross-examine witnesses or supply more testimony, who was not notified, nor required to be, and was ignorant of the proceeding.

No case could better illustrate the correctness of this position than the one before us.

The subscribing witnesses were not willing to swear that the testator was of sound mind and memory. They would swear, however, that the paper was subscribed by the testator, in their presence, as his last will and testament, and that they attested it in his and each other's presence. They objected to the usual affidavit, because it contained the words referred to. If the devisees had been present, they might have elicited enough about the mental condition of the deceased to have satisfied the clerk that he had capacity to make a will, though these witnesses believed otherwise; more than that, they might have produced other testimony which would have removed all doubt as to his testamentary capacity.

It by no means is true that capacity or incapacity can be proved *only* by the subscribing witnesses. They may express an *opinion*, as an expert may, whilst other witnesses generally would be confined to narratives of facts and conduct. It would have been entirely competent for the clerk to have examined other witnesses, and he might with propriety — and it would have been his duty — have admitted the paper to probate, against the opinion of the subscribing witnesses, if other testimony had satisfied him that the testator had mental capacity to make a will.

The statute intends that, on the *ex parte* exhibition of the paper, the subscribing witnesses must be examined. They are the only competent witnesses as to the signing, publication, and attestation; but others are equally competent to speak of the mental condition. But it is contended that, when the subscribing witnesses had proved the due execution of the paper, it was not incumbent on the propounder to go further,

and make positive proof of mental capacity; but he might rely on the presumption of law in favor of the sanity of all persons.

There has been much discussion and diversity of opinion in the courts whether the proponent of the will must make affirmative proof of a sane mind, — not but that all agree that such must be the mental condition. Must there be direct proof of the fact, or will the presumption of sanity as the normal condition of the mind suffice? A man of unsound mind, or an idiot, has not testamentary capacity; but the presumption of law is that all men are competent, and the exceptional state of incapacity must be shown. Some of the courts, therefore, hold that when the witnesses prove the due execution of the paper as a will, the presumption of capacity may be relied upon, as supplying the absence of direct proof.

When the execution of a deed has been proved by the subscribing witness, it may be recorded or read in evidence. The instrument has been established, and the other party must invalidate it by proof of incapacity to contract. One element of crime is, a wilful and wicked motive, which cannot exist in the insane, yet when the *factum* has been proved, the prosecution may safely rest on the presumption of sanity.

For a collection and comparison of authorities on the subject, see 1 Redfield on Wills, chap. 3, and notes.

Perhaps the better opinion, on a collation and comparison of the several provisions of our statute, is, that some direct testimony of a sound and disposing mind should be given, on proof of the will in common form.

" All persons, male and female, 21 years of age, and of sound and disposing mind, may make a last will and testament." Code, sect. 2388.

Although sect. 1098 is silent as to the extent and sufficiency of proof, yet, when considered in connection with sect. 1100, it may be distinctly inferred that testimony must be offered that the testator was of sound and disposing mind. This

section provides a mode of taking the testimony of a non-resident witness, but it clearly discloses what proof must be made in the first instance. This is the language : " That if the commissioner will certify that the witness made oath　*　*　* that the testator signed and published the writing as his last will and testament, and that the testator was of *sound and disposing mind*, and that the witness subscribed his name in the presence of and at the request of the testator, such testimony shall have the *same* operation as if the witness had been present in court, and the will shall be admitted to probate." This language implies that, on proof of the paper in common form, the testimony must extend to the mental capacity of the testator, as well as signing, publishing, and attestation.

There is nothing in the statute that supports the proposition that if the court or clerk, on the first exhibition of the writing, refuses probate because of insufficient proof (as in this case, of capacity), that the devisee may not, in a formal and more solemn manner, present the paper and supply full proof. Especially must that be so when he was not heard in the first instance, and had no notice. The chancellor may have been right when he confirmed the action of the clerk, but that amounts to no more than an approval of the decision of the clerk on the proof offered.

The remainder-men under the will, having made the heir a defendant, asked permission to make full investigation and proof that the writing was the last will and testament of the testator, valid in law. The court might have heard the testimony, or could have framed an issue for the jury.

The decree dismissing the petition of the appellants is reversed, and the cause remanded for further proceedings.