## WARD *v.* WARD.

[87 South. 153, No. 21320.]

1. WILLS. *When secondary evidence of execution proper on issue of devisavit vel non stated.*
   In an issue of *devisavit vel non*, the proponents must prove the execution of the will by one of the subscribing witnesses thereto, if within the jurisdiction of the court. If either or both attesting witnesses deny its execution or fail to testify to its due execution, then secondary evidence of its execution may be introduced by the proponents.

2. WILLS. *Contestant introduces attesting witness, error of proponents is corrected.*
   Where the proponent fails to introduce the attesting witnesses to a will and they are introduced by the contestant, then the error of proponents is corrected.

3. EVIDENCE. *Attesting witness may testify as to testamentary capacity, but other nonexperts must state basis of opinion.*

The attesting witnesses to a will may express an opinion as an expert upon the testamentary capacity of the testator; other non-expert witnesses are confined to a narrative of facts and the conduct of the testator, upon which they base their opinion as to his testamentary capacity.

4. WILLS. *Evidence insufficient to show undue influence on part of testator's brother.*

The fact that a brother of testator procured the attorney to write the will, procured the attesting witnesses, and excluded all persons from the room while the will was being written is not alone sufficient testimony of undue influence, fraud, or coercion on the part of the brother of the testator.

5. WILLS *Instruction authorizing invalidation of will if testator in any manner guided as to execution held erroneous.*

An instruction is erroneous which authorizes the jury to invalidate a will if the decedent was wholly uninfluenced or in any manner guided or directed about the execution of the will or in procuring attesting witnesses. It is undue influence that vitiates a will.

6. WILLS. *Unreasonableness of will admissible only as showing testamentary incapacity or undue influence.*

Upon an issue *devisavit vel non*, an instruction for contestants is erroneous in authorizing the jury without qualification that they may alone consider he reasonableness or the unreasonableness of the will. This may only be considered when there is testimony tending to show either lack of testamentary capacity or undue influence, and then to be considered together with this testimony.

APPEAL from chancery court of Attala county.

HON. J. A. BRANTLEY, Chancellor.

Proceedings by R. S. Ward for the probate of the will of Ben L. Ward, deceased, in which Mrs. Sallie Ward filed a *caveat*. Decree for contestant, and proponent appeals. Reversed and remanded.

See, also, 85 So. 181.

*M. L. Dew* and *Teat & Teat,* for appellant.

Upon the conclusion of the evidence the proponents asked for a peremptory instruction, which was refused.

The proponents then asked a peremptory instruction upon undue influence, which was also refused. The proponents asked a peremptory instruction on the issue of insanity or lack of capacity to make a will, which was likewise refused, all of which was assigned as error. In the recent case of *Moore* v. *Parks,* 84 So. 230, the court defines the elements of testamentary capacity, in the following words:

"Wills—elements of testamentary capacity stated. If at the time of the execution of a will testator appreciated the nature of his act, the natural objects of his bounty, and was capable of reasoning and thinking how he desired to devise and bequeath his property, he possessed sufficient testamentary capacity."

And in the case of *Moore* v. *Parks,* also in the case of *Gathings* v. *Howard,* 84 So. 240, the court defining undue influence, says: "Wills—motive of testator immaterial. A person of sound mind may execute a will from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice or even a whim or caprice.

"Wills—'undue influence' defined. Influence in a legal sense is undue only when it introduces a transaction which injures some one materially, or which is intrinsically unfair and unconscientious."

Certainly it cannot be said that this was any evidence of insanity. The fact that some of her friends were willing to condone her conduct and to excuse her, did not in any measure change the matter with the sick man, whose wife was torturing him with her adulterous conduct. There is no evidence in the record to show any acts of insanity or in any specific instance where his mind was deranged. *Gillis* v. *Smith,* 114 Miss. 165.

Undue Influence. There is no undue influence shown in this suit. Every act of R. S. Ward, brother of the decedent, is consistent with devotion, fidelity and integrity. There is not a substantive fact nor circumstance in con-

tradiction in this evidence and the peremptory instruction upon undue influence should have been granted.

It was argued in the court below and will be argued here, we presume, that in so much as the will devised part of the estate to the nieces of the decedent that such provision of itself is unnatural and unreasonable and is therefore evidence of undue influence. This is not true. The fact that the decedent shared his estate with his nieces, having been a bachelor and having no children of his own, is neither unnatural nor unreasonable even though his wife had been a virtuous woman, but especially in view of the fact that his wife was an adultress, the provision of this will indicates a high degree of integrity, intelligence and decency. Certainly it should not be contended that this court should countenance an argument upon this premise.

There was no issue left to the jury to be decided. There was neither proof of undue influence or want of testamentary capacity as tested by the decisions in the case of *Moore* v. *Parks,* 84 So. 230; *Gathings* v. *Howard,* 84 So. 240, and authorities cited therein. Upon reading the instructions given for the proponents it will be seen that there is an interminable conflict; no harmony whatever exists in the instructions and the jury was left without a guide to determine the facts in issue.

The subscribing witnesses became hostile to the proponents as shown by the record, but under the case of *Helm* v. *Sheeks,* 116 Miss. 726, 77 So. 820, where the subscribing witnesses refused to testify for the proponents, it was competent to produce other witnesses, bearing on the execution of the will, the sanity of the testator and the question of undue influence.

Upon the whole record the proponents, appellants here, show to the court that upon all of the proof in this case the proponents were clearly entitled to a peremptory instruction and are now entitled to a judgment final in their favor. They therefore ask that such judgment be rendered here in the supreme court as should have been rendered in the trial court and that judgment final be en-

tered for the proponents in establishing the will of the said Ben L. Ward, decedent.

*J. A. Smythe, S. L. Dodd, Fulton Thompson* and *R. H. & J. H. Thompson,* for appellees.

The court will see from the record that the witnesses who negatived the decedent's mental capacity to execute a will had just as good opportunity to form correct conceptions as did those who affirmed it. Mrs. Ward, the widow on objection by contestants was not permitted to testify on the subject. Remember, too, that the burden of proof was on the contestants and that the jury passed upon the credibility of witnesses and their opportunities to know the matters about which they testified; and do not fail to observe that both of the subscribing witnesses to the writing in question, the alleged will, testified to the decedent's mental incapacity. These subscribing witnesses are erroneously called hostile by proponent's solicitors, meaning only that their testimony was unfavorable to proponents. A witness who speaks the truth and who does not depart therefrom and who does not violate the oath propounded to him is not a hostile witness; to be hostile a witness must, at least intentionally, give his testimony a false coloring favorable to the adversary of the party to whom he is hostile.

Two attesting or subscribing witnesses to a will devising lands are required by statute; they must be examined in a proceding to probate the will, and are the only competent witnesses by whom the signing, publishing and attestation of the writing can be established. *Martin* v. *Perkins,* 50 Miss. 204. While the law formerly required proof by the attesting witnesses of the alleged testator's sanity, it now appears that his mental capacity may be proved, as held by recent decisions, by other witnesses and some present day courts go so far as to hold that the sanity of a testator may be shown by other witnesses even when all the subscribing witnesses affirm his insanity. All courts

seem to agree that the law regards, the testimony of at-
testing witnesses as the best evidence and it has been de-
cided by this court in *Martin* v. *Perkins, supra,* that they,
with or without stating the facts, may express their opin-
ions as to the mental condition of a testator at the time of
the execution of the writing while other witnesses are con-
fined to a narrative of facts. If this be the law the only
competent opinions offered in evidence to show decedent's
state of mind were those of Prevost and Skelton who at-
tested the writing in question. That the contestants were
required to prove at least *prima facie* the decedent's mental
capacity is shown, not only by *Martin* v. *Perkins, supra,*
but by a recent decision of this court. *Gathings* v. *Howard,*
84 So. 240. In the case at bar the alleged will was not
probated even in common form. A *caveat* was interposed
to the application for its probate and the issues now be-
fore the court arose thereon.

It was decided in *Martin* v. *Perkins,* 56 Miss. 204, that
the subscribing witnesses are the only persons by whom
the signing, publishing and attestation of a will can be
proved. This is correct, otherwise, the statute requiring
attesting witnesses is ineffective and useless. To permit
others than the attesting witnesses to prove the signing,
publishing and attestation of the alleged will is to disre-
gard and nullify the statute. Under the statute, Missis-
sippi Code 1906, section 1991, the due execution of a will
must be proved by a subscribing witness, if alive and resi-
dent of the state, and competent to testify.

The general rule laid down by the statute is that due
execution can be proved only by a subscribing witness.
The statute enumerates its own exceptions and thereby
excludes all other exceptions to the rule, and the courts
should not engraft on the statutes other exception than
the ones herein enumerated.

We submit, therefore, that the court below should have
instructed the jury to find for the contestants as it was
requested but refused to do. If we be correct, it follows
that error cannot be predicated of any instruction given

contestants or refused proponents, since a correct decree will not be reversed where the jury have found as they should have been instructed to find. *Nichols* v. *Gulf, etc., R. Co.,* 83 Miss. 126.

The signing, publication and attestation of a will can be proved by other persons than the attesting witnesses only when the attesting witnesses are dead or beyond the jurisdiction of the court or perhaps when they have no recollection of the facts. In this case they were alive and in the court, remembered the facts and testified.

The argument of opposing counsel wherein they contend that the proponents were entitled to a peremptory instruction needs no answer; that portion of their brief relating to this subject assumes as true so much of the testimony as appears to them to be in their client's favor and wholly ignores the testimony adverse to them. We do not think that the proponents were entitled to a peremptory instruction, even if there had been no testimony in this case but their own because the signing and publication of the will by the decedent was not shown by either of the attesting witnesses, certainly its publication was not so shown, but was negatived by both of them. Neither of the attesting witnesses were out of the state; both of them were present in court and both testified on the trial of the case; they were not shown to have had no recollection of the facts. This case on the point now being considered does not fall within the utterances of this court on the subject in *Helm* v. *Sheeks,* 116 Miss. 726, 773. The case cited would be authority in appellant's favor if the attesting witnesses were present, as they were, in court and disclaimed all recollection of the facts. No such disclaimer was made.

The instructions. In considering the assignments of error predicated of instructions granted contestants and those refused the proponents, the court will bear in mind two propositions:

First: The burden of proof was on the complainants to establish not only the sanity of the alleged testator but

expressly to show the signing and publication of the will. We have hereinbefore made known to the court that in our judgment the contestants wholly failed to prove even *prima facie,* the publication and signing of the will by competent testimony; the only competent witnesses under the circumstances of this case to, the publication and signing of the will were the attesting witnesses, Prevost and Skelton, and neither of them proved the publication of the will or its subscription; certainly they wholly failed to show an essential to the validity of any will, its publication; both of the attesting witnesses negative the publication of the will by the alleged testator.

It is true that some other witnesses testified on the subject and it is claimed by the proponents that their testimony was sufficient to show the signing and publication, but these witnesses were incompetent to make such proof. The rule generally is that the admissibility and competency of testimony is to be determined by the court, but the jury has rendered a verdict based upon competent testimony even if it failed to credit or give weight to incompetent testimony admitted by the court, such a verdict should not be vacated or a decree thereon reversed, because the verdict is correct and proper under the law. In this case the verdict is correct because the publication of the alleged will was not shown by competent witnesses, and this aside from all other questions.

Second: The court will consider the instructions as a whole, and if taken together they correctly propound the law, a reversal will not be based upon error, if any be found, in any one of them.

We submit to the court that the decree of the chancery court should be affirmed.

SYKES, J., delivered the opinion of the court.

Ben L. Ward left surviving him at his death his wife, Mrs. Sallie Ward, and no children. By will he devised to his wife a life interest in a part of his real estate, with

remainder to some nieces and nephews. The balance of his real estate was devised to these same nieces and nephews. After Mr. Ward's death the will was offered for probate, and a *caveat* was filed against its probation by Mrs. Ward, the widow, and an issue of *devisavit vel non* was made. The two questions presented under this issue were lack of testamentary capacity and undue influence. These two issues were submitted to the jury, and a verdict returned in favor of the contestants.

It is first contended by the appellants, proponents of the will, that a peremptory instruction should have been given in their favor on both of these issues. After a careful examination of the testimony we are of the opinion that the jury could have found in favor of either side on either of these issues, and that on both issues it was a question of fact for the jury.

The will was prepared by Hon. Percy L. Guyton in the sickroom of the testator. It was signed by the testator and by N. D. Skelton and L. S. Prevost as witnesses. The proponents failed to introduce either Skelton or Prevost to prove the due execution of the will. Both of these witnesses were placed upon the stand by the contestants. The substance of their testimony is that they went to the home of the testator at the request of his brother, R. S. Ward; that Mr. Guyton requested them to sign the will as witnesses, and that they did so; that they were not requested to sign it by the testator, but signed it in his presence. They then testified that in their opinion the testator did not have sufficient testamentary capacity to make a will.

It is contended by the appellee that a peremptory instruction in her favor should have been given in the lower court, because the contestants failed to prove by the two witnesses to the will the signing, publication, and attestation as required by section 1991, Code of 1906 (section 1656, Hemingway's Code). This section provides that the due execution of the will must be proved by at least one of the subscribing witnesses, if alive and a resident in the state, and competent to testify.

124 Miss—45.

The case of *Martin* v. *Perkins,* 56 Miss. 204, is relied
upon by the appellee. It is held in that case that the sub-
scribing witnesses to the will must be examined, that they
are the only competent witnesses to the signing, publica-
tion, and attestation, but that others are equally competent
to speak of the mental condition of the testator at the time
of the making of the will.

From an examination of the entire testimony of these
two attesting witnesses its effect is that the testator signed
the will in their presence, and that they were requested to
sign it as witnesses by Mr. Guyton, who drafted the will,
which request was made in the presence of Mr. Ward,
which in effect was really the request of the testator, pro-
vided he possessed sufficient testamentary capacity. The
case of *Martin* v. *Perkins,* also held that the capacity or in-
capacity of the testator may be proved by other than the at-
testing witnesses to the will. The attesting witnesses to
the will may express an opinion as an expert as to the
capacity of the testator, while other nonexpert witnesses
are confined to a narrative of facts and the conduct of the
testator, and base their opinion upon these facts.

The rule that the due execution of a will may only be
proved by one of the two attesting witnesses thereto has
been modified in this state. In the case of *Helm* v. *Sheeks,*
116 Miss. 726, 77 So. 820, it was held that it was the duty
of the proponent of the will to produce one of the sub-
scribing witnesses, if within the jurisdiction of the court,
or to take his deposition if that could be done; that the
testimony of the subscribing witness is the best evidence,
but if these witnesses cannot be produced, or if produced
will not testify to the execution of the will, or are not able
to recall the facts, then secondary evidence may be intro-
duced. To the same effect is *Williams* v. *Moorehead,* 116
Miss. 653, 77 So. 658.

In this case the proponents should have introduced these
two attesting witnesses, who were within the jurisdiction
of the court, and as a matter of fact were witnesses present

at the trial. Their failure to introduce them, however, was corrected by the contestant's introducing them.

The testimony of Mr. Guyton was to the effect that the will was properly executed, and that the testator had sufficient testamentary capacity to make a will. Under this testimony the contestants were not entitled to a peremptory instruction.

Mrs. Sallie Ward, the widow, over the objection of the proponents, testified that she had not been guilty of any misconduct as the wife of the testator, and that she had not admitted to the testator that she had written some letters, or been guilty of any improper conduct. She testified that she had been a true wife, and had nursed and waited upon her husband during his illness. She also testified to an irrelevant matter about some money and personal property being turned over or taken by the appellant, R. S. Ward, during the lifetime of her husband, and of the visits of the appellant to her husband, and that after these visits her husband was not as affectionate toward her as he was before; that she was present at the house when Mr. Guyton was there, but did not know what was done at that time, because it was kept a secret from her. She testified to other conferences in the house between her husband, appellant, and John Ward, which she was not permitted to attend. This testimony directly tended to sustain the contention of the contestants upon the question of the undue influence exerted upon the testator by the appellant, R. S. Ward, and consequently was to establish her claim as the widow against the estate of the deceased, and was not admissible. *Whitehead* v. *Kirk,* 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L. R. A. (N. S.) 187, Ann. Cas. 1916A, 1051; *Graham* v. *Taylor,* 117 Miss 736, 78 So. 706; *Cooper* v. *Bell,* 114 Miss. 766, 75 So. 767; *Helm* v. *Sheeks,* 116 Miss. 726, 77 So. 820.

There was a great deal of incompetent testimony introducted by both sides about matters in no way concerning the issues. The two questions for the jury to decide were: First, whether the testator had sufficient testamentary

capacity to make the will; second, whether or not he was so unduly influenced by the appellant, R. S. Ward, that his will was subdued and subordinated by the will of R. S. Ward and the free agency of his mind thereby taken away, and the instrument really made to speak the will of R. S. Ward. A great many nonexpert witnesses in the case were permitted to express their opinion as to the capacity or lack of capacity of the testator without first stating the facts upon which this opinion was based. This court has repeatedly held this to be error. *Martin* v. *Perkins, supra.* This rule is aptly stated in the opinion in *Shechan* v. *Kearney,* 82 Miss. 688, 21 So. 41, 35 L. R. A. 102, as follows:

"With respect to the rule as to allowing non-experts to give their opinion as to the soundness of mind of the subject of inquiry, the true view is set forth in *Wood* v. *State,* 58 Miss. at page 742. They should testify as to the facts, acts, declarations, etc., of the subject of inquiry, and then give their opinions based upon these facts."

Twenty-six instructions were given the jury in favor of the contestants. Some of which are absolutely erroneous, and a number of others are inaccurately drawn. There is a great deal of unnecessary repetition in these instructions. We shall point out a few of the glaring errors in some of them. Instruction No. 4 is as follows:

"The court instructs the jury that the existence of confidential relations between Ben L. Ward, the principal, and the beneficiaries under the will, coupled with activity on the part of the latter in and about the execution and preparation of the will, such initiation for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witnesses, excluding persons from the testator at or about the time of the execution of the will, concealing the making of the will after it was made, and the like, will raise the presumption of undue influence and cast on them the burden of showing that it was not induced by coercion or fraud on their part directly or indirectly."

This instruction is in error in assuming that confidential relations existed between Ben L. Ward, the testator, and the beneficiaries in the will, his nieces and nephews. Save the fact that they are his nieces and nephews there is no testimony whatever to show any such relation. His only confidants and advisers, as shown by the testimony, were his brothers, Bob and John, especially Bob, the appellant. Neither is there any testimony tending to show that these two men were in any wise authorized to act in this matter for the beneficiaries. Neither was there any activity whatever, and neither did the beneficiaries in any way have anything to do with the preparation of the will. If any one actively participated in this preparation it was Bob Ward. Even if this instruction were drawn with reference to the conduct of Bob Ward, the appellant, instead of the beneficiaries, it would be error to assume as true certain disputed facts, namely, concealing the making of the will. These facts alone would not be sufficient to establish undue influence on the part of Bob Ward, but would be consistent with the view that he was merely assisting his brother at his request in order that the brother might prepare his will. From these facts alone the jury would not be warranted in finding that the mind of the testator was dominated and subdued by that of Bob Ward, and that the will was really that of Bob Ward instead of the testator.

The concluding part of instruction No. 8 reads as follows:

"And that he, the said decedent, was wholly uninfluenced or in any manner guided or directed about or concerning the signing, publication, or securing of any attestation thereof by any person whomsoever, otherwise the jury cannot return a verdict for the proponent."

By this instruction the jury were authorized to return a verdict for the contestants if they believed that the testator was in any manner guided or directed about the preparation of his will. In other words, though the will may have expressed the intentions of the testator, yet if

he was in any way assisted in its preparation by any one he was thereby unduly influenced.　This, of course, is error.[1]　A testator has the right to be directed and assisted in the preparation of his will.　Oftentimes a lawyer is consulted as to its legal effect and drafts the will.　He is entitled to any aid or direction that he may desire.　The only requirement is that the will be that of the testator. It is not the law that a will is void because the testator is partially influenced by any one in the disposition of his property.　It is undue influence that vitiates a will. *Burnett* v. *Smith,* 93 Miss. 566, 47 So. 117; *Gathings et al.* v. *Howard,* 84 So. 240; *Scally et al.* v. *Wardlaw et al.,* 86 So. 625.

Instructions Nos. 9, 19, and 26 are as follows:

"No. 9.　Where a will is unreasonable in its provisions and inconsistent with the duties of the testator, with reference to his property and family, this, of itself, will impose on those claiming under the instrument the necessity of giving some reasonable explanation of the unnatural character of the will, and it devolved upon the proponents in this case to give a reasonable explanation of the unnatural character of the will."

"No. 19.　The court instructs the jury for Mrs. Ben L. Ward, the contestant in this case, that the testator had the right and power to dispose of his estate by will according to his said condition, not contrary to law, yet if they believe from the evidence that the will now offered in evidence is unreasonable and inconsistent with his duty, with reference to his property and family, then the proponents of the will must give some reasonable explanation of its unnatural character, and if they fail so to do from the evidence they will find against the will."

"No. 26.　The court instructs the jury for Mrs. Ben L. Ward, the contestant, that if they believe the proposed will, offered for probate, is unreasonable in its provisions, and inconsistent with the duties of the testator with reference to his property and family, this of itself will impose

upon those claiming under the instrument the necessity of giving some reasonable explanation of the unnatural character of the will."

In this case the testator devised certain of his property to his nieces and nephews, and devised to his wife a life estate in certain property, with remainder to these nieces and nephews. It was error to instruct the jury as a matter of law that this will is unreasonable in its provisions. It was a question of fact for the jury to say whether or not under the testimony they believed this to be an unreasonable will. Even if the jury believed the will to be unreasonable, this of itself is not sufficient to set it aside or to cast upon the proponents the duty of giving a reasonable explanation for its unnatural character. It is only when there is other testimony tending to show either undue influence or lack of testamentary capacity that the jury is authorized to consider the terms of the will, and the unreasonable terms are only one of the circumstances to be considered in connection with the other testimony —from all of which the jury is to decide whether or not the testator was either unduly influenced or lacked sufficient testamentary capacity to make a will. *King* v. *Rowan,* 82 Miss. 1, 34 So. 325; *Jamison* v. *Jamison,* 96 Miss. 288, 51 So. 130; *Scally* v. *Wardlaw,* 86 So. 625.

*Reversed and remanded.*