MINOR ET AL. *v.* RUSSELL ET AL.

[88 South. 633, No. 21867.]

WILLS. *Forcibly preventing testator from changing will held not such a change in conditions or circumstances as to amount to a revocation by implication.*

Where the testator is forcibly prevented from changing his will immediately prior to his death, this fact is not such a change in conditions or circumstances as warrants a ' revocation by implication," such conduct of the testator being an attempt to expressly revoke the will, which can be done only as provided by section 5079, Code of 1906 (section 3367, Hemingway's Code), and where the unsuccessful attempt is merely to change the will in some unknown respect, such change might not amount to a revocation under any circumstances.

APPEAL from chancery court of Jackson county.

HON. D. M. WATKINS, Chancellor.

Proceedings by H. F. Russell and others to probate the will of J. D. Minor, deceased, to which Harry H. Minor and others filed a *caveat.* A demurrer to the *caveat* was sustained, and contestants appeal. Affirmed.

*Mize & Mize,* and *S. C. Broom,* for appellant.

The statement of facts contained in the *caveat* filed herein is presumed to be true and correct as therein stated, and the cause having been disposed of by decree of the lower court, sustaining a demurrer to the *caveat,*' there is left nothing to be determined by the court, except that whether or not as a matter of law the facts as stated in the *caveat* work a revocation of the will by implication. If there was a revocation of the will it was an implied revocation; if there was an implied revocation, J. D. Minor, died intestate, whereupon his estate will descend under the law of descent and distribution and his nieces and nephews being his sole and only heirs, and the next of kin will receive equal shares in the estate.

Notwithstanding Code 1906, section 5079 (Hemingway's Code, section 3367) providing how a devise may be revoked, the doctrine of implied revocation has at least to some extent been recognized in Mississippi. See *Caine et al.* v. *Barnwell,* 82 So. 65; See, also, *Garrett* v. *Dabney,* 27 Miss. 335; *Jones* v. *Mosley,* 40 Miss. 261, 90 Am. Dec. 327; *Hoy* v. *Hoy,* 93 Miss. 732, 48 So. 903, 25 L. R. A. (N. S.) 182, 136 Am. St. Rep. 548, 17 Ann. Cas. 1137.

Our court in *Garrett* v. *Dabney, supra,* observed: "That this statute is in substance the·same as sixth section of 29 Charles II and it is well settled in England and the United States, that the statute applies to acts of direct and express revocation and that a will may be revoked by implication or inference of law by various circumstances not within the purview of the statute."

We submit that the language "various circumstances" is very significant. The court must have believed, as we now believe, that it would be impossible to say that any particular thing or circumstance, if done or omitted to be done, would constitute an implied revocation of a will. As a matter of fact if the court should attempt to enumerate the things and circumstances necessary to revoke a will, it would then become an express revocation and the doc-

trine of implied revocation would no longer exist or be recognized. Undoubtedly the idea was and is not to establish a fixed rule, but to hold ourselves in readiness to consider any facts or circumstances that would indicate an intent to revoke a will, to the end that we may determine from the facts and circumstances of any particular case what was the intent of the testator in that particular case.

Judge HARRIS speaking for this court in *Wells* v. *Wells,* 35 Miss. 638, discussed the doctrine of implied revocation and said: "The doctrine of implied revocation proceeds upon the principle of presumed intention and such presumption may be rebutted by circumstances. Douglass, p. 31; *Brush* v. *Wilkins,* 4 John Ch. (N. Y.) 506; *Yerby* v. *Yerby,* 3 Call, —.

We understand the common law rule to have been: "That whenever there was a change of moral obligation there was an implied revocation of the will."

That is to say, if a man should make a will and afterwards marry, and a child should be born, the will would be revoked by implication. This rule must have been established by a process of reasoning like this: "The testator evidently did not contemplate matrimony at the time he executed the will; he evidently afterwards forgot that he had made a will, or he evidently intended to make another, and we will presume that he was a natural man, and with a natural paternal instinct, and he could not have intended to disinherit his wife and child. We therefore say, that under these circumstances, this will has been revoked by implication. That was the common-law rule." A change of moral obligation. "But we are not bound by this narrow common-law rule. Our court has said that various circumstances revoke a will by implication, and we submit that every authority in Mississippi proceeded upon the theory that it was the intent of the testator which governed that the sole aim of the court was to determine what was the intent of the testator in the particular case and under the particular circumstances, and facts sur-

rounding that case. We submit that this is the correct rule and if it is the correct rule, then there is no possible question as to the intent of the testator in the case of J. D. Minor, because it is agreed for the sake of argument at least, and so far as this demurrer is concerned, that the matters and things alleged in the *caveat* are true and correct as therein stated, that it was his intent to change the will; that he would have done so if he had not been forcibly prevented from so doing.

John E. Alexander of the San Francisco Bar in Commentaries on Wills, Vol. 1, page 722, sec. 533, says: "An implied revocation is a deduction of law from established facts. It has been held that this implication of revocation may be rebutted by circumstances and that the declarations of the testator in his last sickness are admissible for this purpose; but the weight of authority seems to be to the contrary . . . The statutes in America provide that no devise shall be revoked by the testator cancelling, and the like only applies to acts of direct and express revocation, and that will may be revoked by implication or inference of the law by various circumstances not within the purview of the statute. (Mr. Alexander there cites *Garrett* v. *Dabney,* 27 Miss. 335.) From this interpretation of the statutes we have the doctrine of implied revocation. Implied revocation is of two sorts: (a) An implication from a supposed change of the intention of the testator, manifested by marriage or marriage and the birth of a child, and manifested by an attempted conveyance of the estate devised.

We are not here concerned with the second form or revocation by implication as outlined by Mr. Alexander under (b) but we do insist that we do come clearly within the first subdivision (a) as outlined by Mr. Alexander. Now let us analyze his rule and see if our case does not square with that.

An implication from a supposed change of the intention of the testator, manifested by marriage or marriage and the birth of a child. We have already observed that our

court in the case of *Garrett* v. *Dabney, supra,* the rule has been established that "various circumstances not within the purview of the statute" will revoke a will by implication.

Mr. Alexander, however, in the same volume, page 740, page 546, lays down the rule that, intent to revoke, without the performance of some act, is insufficient. Now at first glance, it would appear that if this be true, then in the case of J. D. Minor, there was an acknowledged intent to revoke the will, but there was no act or performance on his part to execute the intent, but we think that the rule as stated by Mr. Alexander does not apply in the present case for the following reasons: In the first place we observe Mr. Alexander's book was published in 1917; that he was but human, and this rule did not originate within his mind, but he arrived at this conclusion. From the reasoning of the case of *Bohleber* v. *Redstock,* 225 Ill. 53, Ann. Cas. 1913D, 307, 41 L. R. A. (N. S.) 105, which case was reported July 21, 1921. Now in that case the facts are in substance as follows: John Rebstock resided five miles from the city of Carmi, and his will was in the city of Carmi; that he was in feeble health and unable to leave his house, being confined to his bed most of the time, and he expressed a desire to change or revoke his will and requested and entreated his sons, William and Joseph to have a lawyer brought to his house, so that he might change or revoke his will, but they refused to comply with his request and threatened violence to any one who would bring a lawyer to their father or in any manner render assistance to him in changing or revoking his will, thereby defeating his intention to change or revoke said instrument. Sec. 17 of chapter 48, of Hurd's Statute reads as follows:

"No will, testament or codicil shall be revoked otherwise than by burning, cancelling, tearing or obliterating the same by the testator himself or in his presence by his direction and consent or by some other will, testament or codicil in writing, declaring the same signed by the testator or

testatrix in the presence of two or more witnesses and by them attested in his or her presence; and no word spoken shall revoke or annul any will, etc."

The court in this case very properly sustained a demurrer to the bill because the language of the statute expressly provided that: "No word spoken shall revoke or annul any will, testament or codicil in writing." We think this was a correct construction of the Illinois statute; we think Mr. Alexander's rule is the correct rule in Illinois, because of that statute; but we have the language of the court in the case of *Garrett* v. *Dabney,* in which it is held that various circumstances will revoke a will by implication.

Again quoting from the case of *Bohleber* v. *Redstock, supra,* we find this language by the court: "Prior to the enactment of any legislation upon this subject in England, the question whether an intention to revoke a will was sufficient to constitute a revocation, was considered by the courts and the courts held that such an intention was sufficient to effect a revocation. These decisions lead to such uncertainty in the stability of wills and to such suspicion that wills were being defeated by perjury, that an act was passed defining what was necessary to the revocation of a will by the testator for his lifetime, and as above stated the various states of this country have enacted similar legislation."

In Mississippi we have never entertained the suspicion that wills were being defeated by perjury, and we have never found it necessary to change our statute from the act of Charles II. We, therefore, have no quarrel with the rule as stated by Mr. Alexander and with the construction of the Illinois statute, but it does not apply to Mississippi.

We therefore most earnestly submit that the alleged last will and testament of J. D. Minor, deceased, was revoked by implication and that he died intestate, and we respectfully submit that this cause should be reversed and remanded.

*H. B. Everett,* for appellee.

It is insisted that if the facts alleged are true which the demurrer admits, then these facts and circumstances work a revocation of the will by implication of law because it was said in *Garrett* v. *Dabney* that a will may be revoked by implication or inference of law by various circumstances not within the purview of the statute. It is argued by counsel that the words, various circumstances, are significant and far reaching and are broad enough to cover a case or circumstances sufficient for revocation in the fact that the testator was forcibly prevented from making some change in his will, of a character not disclosed, according to an intent or desire which the testator expressed. It is manifest that to put such a construction on the language referred to would extend the rule, originating with *Garrett* v. *Dabney,* far beyond anything dreamed of by the author of that decision, and would practically nullify the statute. No decision will be found either in England or America that has thrown down the bars, to such an extent as that suggested.

In *Hoy* v. *Hoy,* cited by counsel this case of *Garrett* v. *Dabney,* is discussed at considerable length and it is there stated that, in construing the English statute of which our statute is a rescript, the court in *Garrett* v. *Dabney,* adopted the construction there given to the effect that implied revocations were not thereby abolished, saying: "This must mean that the English statute was adopted in Mississippi together with the construction put upon it by the English courts." It is also held that this construction had the effect or incorporating upon our statute a limitation that in some states is expressed by a proviso, as in Massachusetts, to the following effect but that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. Referring to this proviso the supreme court of New Hampshire is quoted as saying this proviso: "prac-

tically and in effect it was an adoption under then existing conditions, of such implied revocations as had been introduced and established by the English courts, contrary to the plain meaning of the English statute, and solely through the usurpation of legislative power. But the English courts did not go the length of establishing a rule that revocation might be shown by any change of circumstances affording satisfactory evidence of the testator's revoking intention, but stopped far short of it, and restricted its application to a few exceptionable occasions as to which it was held the statute did not apply."

It is manifest, therefore, that until counsel shall have cited some case or some precedent originating with the English common law for revocation by implication of law, independent of this statute, no ground can be found on which to stand. The common-law grounds of revocation by implication of law that were entirely apart from what is known as covered by the statute as express revocation or revocation by acts of the testator, were in the main changes in the circumstances and conditions as affecting the moral obligations of the testator, such as marriage and the birth of issue, as briefly expressed in the quoted comment of Mr. Alexander at page 5 of counsel's brief; to-wit: "Implied revocation is of two sorts: (a) An implication from a supposed change of the intention of a testator, manifested by marriage or marriage and the birth of a child, and manifested by an attempted conveyance of the estate devised."

The rule rests upon the idea that the changed condition and circumstances of the testator respecting his property, his family or beneficiaries, imposing different and legal duties, afforded strong evidence that the testator intended that his will should become revoked, as to the provisions affected by such subsequent change in his condition and circumstances. So in the case of *Garrett* v. *Dabney*, holding that such rule of revocation existed independent of the statute as held by the courts of England.

In following that case it was held in *Jones* v. *Mosley,* that the rule did not apply in a case of the reconciliation by the testator with a daughter not provided for in his will and as to whom he expressed his desire to provide, for the reason that under the rule of the common law, revocation was not implied in case of a change imposing no new moral testamentary duty, a principal.which lay at the foundation of the rule of changed condition producing revocation by implication of law.    So in *Hoy* v. *Hoy,* the question is whether marriage alone without the birth of issue was sufficient to work implied revocation of the will in view of the fact that our statute makes the widow an heir.    The question was answered in the negative, the court declining to go further than the application of the rule by the English courts as constrained by the decision of *Garrett* v. *Dabney.* Counsel cite no case either of the American or English courts placing a state of facts analogous to the case at bar as being within the category of implied revocation, but their attention is called by Mr. Alexander from whom they quote so largely, to the Illinois case of *Bohleber* v. *Redstock,* that is much like the case here.    By this case it is held, and counsel think correctly, that the case of the defeat of the desire of the testator to change or revoke his will, by force and threats of violence, was covered by the statute of that state which is almost identical with our statute on the subject of express revocation, except that it concludes with the words: "and no words spoken shall revoke or annul any will, testament or codicil in writing." Counsel approve this decision because of these last words, only.    In that case the court said that the English courts had once held that the expression of an intention was sufficient to effect the revocation, but that under this rule there was such uncertainty in the stability of wills and suspicion that wills were being defeated by perjury that this act was passed defining what was necessary for the revocation of a will.

Counsel say we have no such statute in Mississippi as that referred to in Illinois, as we have never entertained

the suspicion that wills were being defeated by perjury
and have never found it necessary to change our statute
from the act of Charles II.  Counsel are unfortunate in
thus using and at the same time undertaking thus to break
the force of this decision because it so happens that the
very statute referred to as adopted for correcting the evil
in England and which Mississippi, in the very beginning
of her statehood adopted almost *verbatim,* is the 6th sec-
tion of 29 Charles II; our act was passed by the legislature
of 1821 and was section 649 of Hutchinson's Code and which
is now section 5079, of our Code of 1906, and without the
concluding sentence of the Illinois statute not thought to
be necessary.

The leading English case, construing this clause of the
statute, is the case of *Reid* v. *Harris,* 6 Ad. & El. 209, or 33
Eng. Com. L. 129, where the testator threw the will in the
fire and a by-stander snatched it away.

The question is put whether the will must be destroyed
wholly, or to what extent.  It is hardly necessary to say,
but there must be such an injury with intent to revoke
as destroys the entirety of the will, because it may then be
said that the instrument no longer exists as it was.  Here,
the fire never touched the will.  It can only be said that the
testator's intention to cancel was defeated by the fraud of
another party.  But, to instance another case under the
same clause of the statute, suppose the testator had writ-
ten his revocation, and that by the act of some other party
he had been prevented from signing, or the witnesses had
been prevented from attesting it, could it be said that the
testator had done all that lay in him and that therefore
this act of revocation was complete?  We must proceed on
such a view of this statute as accords with common sense."

It was held in *Smiley* v. *Gambill,* 2 Head. 164, by the
Tennessee court that under the common law as it existed
prior to Car. 2 that the destruction of another paper by
the testator that had been substituted for the will by fraud
was a sufficient act of revocation.  But it is held that such
an act of fraud will not constitute a revocation under the

statute of Car. 2 in cases of *Hise* v. *Fincher,* 10 Ired. 139;
*Boyd* v. *Cood,* 3 Leigh 32; *Malone v. Hobbs,* 1 Rob. (Va.)
346; *Chingan* v. *Mitcheltree,* 31 Pa. St. 27; *Kent* v. *Ma-
haffey,* 10 Ohio St. 204; *Gains* v. *Gains,* 2 A. K. Marshall
152, 12 Am. Dec. 375; *Floyd* v. *Floyd,* 1 Strobhard 44; 49
Am. Dec. 629.

But another element of weakness of the case at bar, if it
were possible to escape this statute, and to classify the
acts and circumstances alleged as coming under the classi-
fication, is the fact that the intention expressed by the
testator is that of an undefined desire to make some
change or alteration, the nature of which was not made
apparent.    Manifestly on considerations of reason, this
expression could not be construed as an intention to re-
voke nor can any case be found, I believe, in England, or
America in which an expression of an intention to change
or a desire to change or alter, defeated or thwarted by
force, or fraud, has been held to produce the result of
either an express or implied revocation *in toto.*   On this
subject I find but little authority though it seems that
some courts have held that courts of equity will, under
certain circumstances, effectuate the intention of the tes-
tator to change or alter the will as to a beneficiary when
prevented from making the alteration by the force or fraud
of the beneficiary.    But even this has been doubted and
only applied in very clear cases and could have no applica-
tion to the case here.

But it is insisted here that the will should be treated as
revoked *in toto* simply because it may be shown by parol
proof that the testator at one time expressed a desire to
change the will.    The proposition is nothing short of start-
ling in view of the uniform authority on the subject in
England and America, as the proposition goes further
than the evil said to have resulted from the original state
of the English law, of revocation by proof of intention to
revoke, which evil was corrected or sought to be corrected
by the statute which we have copied for a like purpose, and
construed according to its construction by the English
courts.

HOLDEN, J., delivered the opinion of the court.

This case presents a contest of the will of J. D. Minor, deceased, by the appellants, who filed a *caveat* against the probate. A demurrer to the *caveat* was sustained by the court, from which decree this appeal is prosecuted. No point is made with reference to this unusual method of pleading; and, assuming the facts to be true as set up in the *caveat,* the question for our determination is whether or not the will was "revoked by implication." We here set out the *caveat,* which by the pleadings is taken to be true: "That said purported will is null and void, and is not the last will and testament of the said J. D. Minor, because, after said purported will was made, and about one day and a half before the death of said J. D. Minor, the said J. D. Minor called said Minor Russell to him, and told him to get said will for him, as he desired to change said will; that just at this time Dr. O. L. Bailey, the family physician of said J. D. Minor, appeared on the scene, and ordered all proceedings with reference to changing said will stopped; and that said Dr. Bailey, by his said conduct in ordering said proceedings stopped with reference to changing said will forcibly prevented said J. D. Minor from changing his said will; that said J. D. Minor was then sick and physically not able to override his said physician's orders and directions not to proceed with reference to changing his said will, and said J. D. Minor about a day and a half later died without having made any change in his said purported will. That, therefore, by implication, the said will of said J. D. Minor, deceased, is revoked, because said J. D. Minor, as aforesaid, was forcibly prevented by his physician's orders from proceeding to change his said will as he stated he desired to do.

"Wherefore, these *caveators,* to-wit: Alma Minor Farmer, Hall Minor, Frank Minor, and Mallory Minor, do hereby allege and assert that the said purported last will and testament of said J. D. Minor, deceased, of which a copy is made Exhibit A hereto, and which is now being at-

tempted to be probated as aforesaid, ought not to be probated as the last will and testament of said J. D. Minor, deceased for the reason that, by operation of law, it is revoked because the decedent was forcibly prevented as aforesaid from changing said will."

Taking the case as stated in the *caveat* in the most favorable light for the appellants, it appears that the family physician of the deceased forcibly prevented the testator from changing his will in some respect, but to what extent is not shown. We are familiar with the common-law doctrine of "revocation by implication," which appears to have been followed and reannounced in *Garrett* v. *Dabney,* 27 Miss. 335, and subsequently recognized and discussed as late as *Hoy* v. *Hoy,* 93 Miss. 732, 48 So. 903, 23 L. R. A. (N. S.) 182, 136 Am. St. Rep. 548, 17 Ann. Cas. 1137, but the case before us now does not come within the rule, for obvious reasons; the principal one being that the testator here attempted to expressly revoke the will, or change it in some particular, which he was forcibly prevented from doing; consequently there can be no "revocation by implication" under this state of facts. Furthermore the change in the will alleged to have been attempted by the testator, if accomplished, may not have been a revocation. Section 5079, Code of 1906 (section 3367, Hemingway's Code), provides the sole method of expressly revoking a will, which was not followed in this case.

The decree of the lower court is affirmed.

*Affirmed.*