233 So.2d 760 (1970)
Mrs. Carrie Doescher LIVELAR, Individually and as Admrx. C.T.A. of the Estate of John Halder Livelar, Deceased
v.
John L. ARNOLD and Mrs. Frances Arnold Gautier.
No. 45695.
Supreme Court of Mississippi.
March 16, 1970.
*761 Green, Green & Cheney, Shirley N. Jones, Jackson, for appellants.
Thomas, Alston, Davis & Coleman, Jackson, for appellees.
SMITH, Justice:
Mrs. Carrie Doescher Livelar, widow of John Halder Livelar, has appealed from a decree of the Chancery Court of the First Judicial District of Hinds County, admitting to probate as the last will and testament of her late husband an instrument dated August 9, 1962.
The proponents of this document were John L. Arnold and Mrs. Frances Arnold Gautier, childen of a sister of John Halder Livelar, who are the appellees here. John Halder Livelar and Carrie Doescher Livelar had no children of their own.
Under the terms of the document in question, Livelar bequeathed all of his personal property to his wife, the appellant, Mrs. Carrie Doescher Livelar, and devised to her outright their home, together with a life estate in all other real property (consisting of an undivided interest in a building on Capitol Street in Jackson) with remainder in the latter to the said children of the sister, John L. Arnold and Mrs. Frances Arnold Gautier.
It is conceded that at the time of the execution of the 1962 will, Livelar was of sound mind, there is no suggestion of undue influence, and there is no question as to the sufficiency of its execution to comply with statutory requirements.
The issue is a narrow one. Mrs. Livelar contested the probate upon the ground that the will had been effectively revoked by the testator, and offered for probate as Livelar's last will a holographic will, dated May 28, 1942, under the terms of which Mrs. Livelar would receive his entire estate.
The 1962 will consisted of three typewritten pages.
On the third or last of these pages, immediately beneath the concluding words, "WITNESS MY SIGNATURE, this the 9th day of August, 1962," there was a line, underneath which there had been typed the testator's full name, "John Halder Livelar." On this line, John Halder Livelar had signed the will. Immediately to the left of the testator's signature, there had been typed, in capital letters the word: "WITNESSES," and beneath that word, there were three lines on which appeared the signatures of the three persons who had witnessed the will. Below all of these signatures appeared the following:
The foregoing was declared by John Halder Livelar to be his Last Will and Testament and in his presence and in the presence of each other, we did witness his signature thereto at his special instance and request.
This the 9th day of August, 1962.
On three lines, which followed this certificate, the attesting witnesses had again subscribed their names. All of this was on the third or last page of the will.
At the bottom of each of the first two pages of the will, lines had been provided for the signatures of the testator and witnesses and their signatures appeared on these lines.
After Livelar died on November 12, 1968, the will was found in a lock box at his bank to which only he had access. When found, it was in an envelope bearing the printed name and address of a law firm in the upper left corner, and there had been typed upon the face of the envelope: "LAST WILL AND TESTAMENT OF JOHN HALDER LIVELAR." Also, upon the face of the envelope, but in ink, were the figures 6-17-68. It was not shown by whom this notation had been witten.
*762 When examined on removal from the box, the testator's signature (but not the signatures of the witnesses) had been cut off the bottom of the first two pages of the will, apparently with scissors or some other sharp instrument. In all other respects the will was in its original condition. The third page, with the signature of the testator and those of the witnesses, together with the attestation certificate, also signed by the witnesses, was unmarred and intact.
At the hearing, an attorney testified that sometime in the late spring or early summer of 1968 he had received a telephone call from Livelar, who had been his client. He stated that Livelar had asked him "if you cut the signatures off of a will does it destroy it?" He said that he had replied "yes, but it is better to tear the will up." In response to that statement he testified that Livelar had said "I did not ask you that, answer my question." The lawyer then said that he had told Livelar "yes, if you cut the signatures off of a will it does destroy it." That was the entire conversation.
At the conclusion of the hearing, the chancellor held that the only signature which had been essential to the validity of the will was that which had been affixed on the third page, at the end, and above the attestation clause. The removal of the signatures on the first two pages, which he concluded had been placed there for identification, without cancelling or removing the testator's signature on the last page, did not effect a revocation of the will under Mississippi Code 1942 Annotated section 658 (1956). In his opinion, the chancellor suggested that Mr. Livelar might have "started out with the intention of revoking the will by mutilation" but changed his mind. He pointed out that in order to revoke a will more than an intention to revoke is necessary, and there must be a compliance with the statute, and that the removal of nonessential signatures from pages one and two did not work a revocation of the will by "destroying, cancelling, or obliterating" it, as required by Mississippi Code 1942 Annotated section 658 (1956).
The case has been ably and exhaustively briefed by counsel for both sides. Apparently, there are no reported cases factually on "all fours" with it. The Mississippi cases indicate as much, and each decision seems to have turned upon facts and circumstances peculiar to that case. See McCormack v. Warren, 228 Miss. 617, 89 So.2d 702 (1956); Wiley v. Wiley, 184 So.2d 854 (Miss. 1966); Minor v. Russell, 126 Miss. 228, 88 So. 633 (1921).
It is to be borne in mind that, in Mississippi, revocation of a duly executed will is governed by statute. Moreover, in order to effect the revocation of a will, it is essential that it be shown in some competent manner that (1) the testator (or someone for him) performed one or more of the acts, specifically in the statute, of "destroying, cancelling, or obliterating" the will, and (2) that he did so with the intention of revoking the will.
In the McCormack case, supra, this Court said:
"The intent to revoke is essential to a revocation by act of the testator. In order that an act shall have the effect of revoking a will, the intention to revoke must appear clearly and unequivocally; a will is not revoked by any act of spoliation or destruction not deliberately done animo revocandi. * * * Even where one of the statutory methods for revoking a will is followed by the testator, his act is ineffectual unless his intent thereby to revoke or alter the will appears. (Id., 228 Miss. at 628, 89 So.2d at 706). (Emphasis added).
In Minor v. Russell, supra, this Court said:
Taking the case as stated in the caveat in the most favorable light for the appellants, it appears that the family physician of the deceased forcibly prevented the testator from changing his will in *763 some respect, but to what extent is not shown. * * * Section 5079, Code of 1906 (section 3367, Hemingway's Code), provides the sole method of expressly revoking a will, which was not followed in this case. (Id., 126 Miss. at 240, 88 So. at 634). (Emphasis added).
Ordinarily, and in the absence of countervailing evidence, a man in possession of his faculties, must be presumed to have intended to do what he did do. Upon this basis, it must be assumed that his omission to remove his signature at the end of the will, where it is customary to sign legal documents, and which was the place provided therefor under the format of the instrument adopted by its draftsman, was intentional. His motive in cutting off his signature from the bottoms of the first two pages titillates the imagination, but it would be mere conjecture to speculate as to what purpose he had in mind in so doing. It is possible, as suggested by the chancellor, that it evidences an aborted intention to revoke, an intention which he abandoned before it was completed. The will continued valid until the requirements of the statute, accompanied by the intention to revoke, had been accomplished. Wiley v. Wiley, supra. In any event, the will was not revoked in the statutory manner by "destroying, cancelling or obliterating" it. So long as what was done fell short of fulfilling one or more of these statutory requirements, revocation was not accomplished.
Appellant relies upon Wilson v. Polite, 218 So.2d 843 (Miss. 1969) as authority for the proposition that each signature was essential and the cutting off of any revoked the will. That case involved a holograph. In Wilson, the Court held that it was necessary that such a will be "subscribed" or signed at the bottom. In what, perhaps, may be described as dicta (since it was in no way necessary to a decision of the case), the Court said that a non-holographic will could be "signed at any place * * * so long as it is declared to be (the testator's) signature, and the instrument is published and signed in the presence of witnesses." In Wilson, the Court refers to Baker v. Baker's Estate, 199 Miss. 388, 24 So.2d 841 (1946) as the source of this conclusion. However, Baker also involved a holograph and the Court's comments there as to the signing of a non-holograph were not necessary to a decision of the question there at issue.
In 95 C.J.S. Wills § 280 a (1957) the rule is stated thus:
Not only must there be an intention to revoke * * * but the intention must be accompanied by some one of the acts enumerated by the statute. (Emphasis added).
We think the chancellor concluded correctly, upon the basis of the evidence before him, including that of the will itself, that the will had not been destroyed, cancelled or obliterated to the extent or in the manner contemplated by the statute, and, therefore, had not been revoked.
Finally, appellant sought to introduce a document said to have been a will made years before by Livelar's father, from which the signature had been removed. The refusal of the court to receive this document in evidence is assigned as error.
In order to consider the analogy sought to be drawn between this instrument and Livelar's will it would be necessary to open up an entirely new question and to determine the legal effect of the mutilation of the earlier document. The witness by whom it was offered could not properly identify it as the will of Livelar's father, nor had any predicate been laid by showing that Livelar himself ever had any knowledge of it. The trial court properly excluded this instrument.
Other matters assigned as error have been considered and are without merit.
Affirmed.
ETHRIDGE, C.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.