Phinizee, et al. *v.* Alexander, et al.

Division B. Dec. 4, 1950.

No. 37576 (49 So. (2d) 250)

John F. Frierson and Robin Weaver, for appellants.

H. T. Carter, W. E. Bearden, Jr., and Sims & Sims, for appellees.

Arrington, C.

On April 4, 1948, John Phinizee died in Lowndes County, Mississippi, and on April 6, 1948, there was presented for probate in common form to the chancery clerk of said county in vacation a petition to admit to probate a document purporting to be the last will and testament of decedent, dated September 25, 1947. The clerk admitted the document to probate as the last will and testament of the decedent, and issued letters testamentary to J. D. Alexander, who had qualified as executor. On December 3, 1948, a caveat and contest of the probate was filed in the chancery court of said county by Pope Phinizee and others, which caveat was amended several times. The contentions of the caveators were: (1) that John Phinizee was then mentally incapable of making a will; (2) that the document was procured through undue influence; and (3) that same did not constitute the true will or any will of the decedent.

In answer filed, proponents submitted the will to the court and offered to prove same in solemn form, all the heirs, devisees, and legatees of John M. Phinizee having been brought into court either as petitioners or defendants. The matter came on for hearing before the chancellor on an issue devisavit vel non on April 15, 1949, a trial by jury having been waived. The chancellor found that proof had been made of the due and legal execution of the will; that John Phinizee was entirely capable mentally of making a will at the time of the execution of the will on September 25, 1947, and ordered that said will be admitted to probate and record as the last will and testament of John Phinizee.

J. D. Alexander, who drafted the will at the request of John Phinizee, testified that he had known John Phinizee for about forty years; that he had business dealings with him for thirty-five years, and that his mind was as good on the day the will was executed as he had ever seen it. Lou Emma Alexander, one of the subscribing witnesses, testified that she had known John Phinizee ten or twelve years, and at the time of the execution of the will he was just the same as he had always been. The court asked her the question: "From your acquaintance with him, and from your observation of him through the years of your acquaintance with him, was he a man of ordinary understanding and sense?" To this question she replied, "He seemed to be." The evidence was ample as to testamentary capacity of the testator at the time of the execution of the will. Scally v. Wardlaw, 123 Miss. 857, 86 So. 625; Ward v. Ward, 124 Miss. 697, 87 So. 153; Fortenberry v. Herrington, 188 Miss. 735, 196 So. 232. No evidence was offered by contestants as to undue influence.

The appellant contestants contend that by reason of the destruction of the duplicate will on white paper, that there was an implied revocation of the will. J. D. Alexander and the subscribing witnesses testified that the will was executed in duplicate, one copy being on white paper and one copy being on yellow paper, and that each copy was separately subscribed. This was not contradicted by any other testimony. Alexander further testified that John Phinizee left his home with both duplicates in his possession. Martha Doss testified that the will on white paper was destroyed by testator some time before his death. The will on yellow paper was found after the death of John Phinizee in his box with other papers. Lou Will Phinizee Winston testified that about one or two weeks before his death, John Phinizee told her he had a will and that it was in his box. She testified further that John Phinizee showed her the will and put it back in his box where it was found after his death, and that

the will offered for probate was the same one that John Phinizee showed her.

 There being duplicate wills, either of the wills possessed the elements of a valid will. Alexander on Wills, Vol. 1, Sec. 116, page 135.

 Section 437, in Page on Wills, Volume 1, is as follows: ''Where a will has been executed in duplicate, the burning, tearing, destruction, etc., by a testator of that copy which he retains in his possession, with intent to revoke the will, is said to create a presumption that testator intends thereby to revoke the will. This is clearly true where one of the copies is not in the possession of the testator, and it is said to be true even where testator has both copies in his possession. This so-called presumption, however, is an inference of fact and not a conclusion of law. The inference is weaker where testator has both copies of the will, and stronger where one of the copies is in the possession of a third person. Even if testator has but one of the copies in his possession, and the other is in the possession of a third person, the partial mutilation, or destruction, of the instrument which is in testator's possession does not establish a revocation conclusively, and if it is shown that he did not intend revocation, such mutilation or destruction will not operate as a revocation.''

The presumption of intention to revoke may, however, be rebutted. 68 C. J., Sec. 758, page 992. ''Where a testator who has executed his will in duplicate cancels or destroys one of the duplicates, the presumption is that he meant thereby to revoke the will, whether the other duplicate is deposited with some other person or is in the testator's possession, although in the latter case the presumption has been said to be weaker, and it has even been held that, where a testator having both duplicates in his possession alters one of them, and then destroys it, a slight presumption of revocation of the will arises. The presumption of intention to revoke may, how-

ever, be rebutted, and it does not arise where the circumstances indicate that no revocation was intended.''

57 Am. Jur. Sec. 553, page 381, reads as follows: ''The general rule is that the intentional destruction by the testator of the copy of his duplicate will retained in his possession raises the presumption of an intent to revoke the will. Such presumption, however, is not conclusive and may be revoked by evidence of a different understanding on the part of the testator.''

The inference that John Phinizee revoked his will by destroying the will on white paper was rebutted by the testimony of Lou Will Phinizee Winston that John Phinizee told her about a week or two before he died that he had a will, and showed her the duplicate will on yellow paper, which is now before the Court.

In Roberts v. Round, 1830, 3 Hagg. Eccl. Rep. 548, 162 Eng. Reprint 1258; 48 A. L. R. 300, where both originals of a duplicate will were found in the possession of the testatrix at her death (one of them partially destroyed, the other unharmed), it was held that the will was not revoked and should be admitted to probate. The court said: ''There being two papers, both in the deceased's possession, the presumption of law would be that by the preservation of one duplicate entire she did not intend a revocation of these particular devises; otherwise she would have mutilated both duplicates.'' The reasoning in this case is sound and applicable to the facts in the instant case.

The evidence in this case was ample to support the findings of the chancellor, and the judgment of the lower court will be affirmed.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.