McCORMACK, et al. *v.* WARREN

No. 40200          October 1, 1956          89 So. 2d 702

*Watkins & Eager*, Jackson, for appellants.

*R. L. Landrum,* Jackson; *Roger Landrum,* Columbus, for appellee.

620

KYLE, J.

This case is before us on appeal by Hugh E. McCormack and others, nephews and nieces of Mrs. Mary Elizabeth Warren, deceased, from a decree of the Chancery Court of Hinds County admitting to probate in solemn form the last will and testament of Mrs. Mary Elizabeth Warren, deceased. The record shows that the instrument offered for probate had been executed in duplicate by the testatrix on April 23, 1945, and both executed copies were in the possession of the testatrix at the time of her death. The instrument consisted of one type-written page, and each of the two copies was duly signed by the testatrix and attested by the two subscribing witnesses. The original or ribbon copy of the instrument, which was found in an envelope with other papers belonging to the testatrix, was torn from the bottom upward by five separate tears which extended to points opposite or above the testatrix' signature. No part of the sheet was torn off however, and the signatures of the testatrix and the subscribing witnesses were plainly ligible. There were no interlineations, erasures or cancellation marks on the instru-

ment. The carbon copy, which was found in another box of papers, was neither torn nor wrinkled. Both copies have been sent to this Court for our inspection.

In Item 1 of the Will the testatrix devised to the descendants of her deceased brother, Robert Fountain McCormack, living at the time of her death, the appellants herein, certain lands in Yazoo County described as the "McCormack Place", and also a residence house and lot owned by her on Fourth Street in Yazoo City, Mississippi. In Item 2 the testatrix devised all the rest and residue of her real property to her husband, Hastings Sandidge Warren, for and during the term of his natural life, with power to sell or encumber any portion thereof and to use the proceeds in such manner as he might desire; and in Item 3 the testatrix devised and bequeathed to Benjamin Hugh Warren, her husband's brother, the appellee herein, so much of the real property devised and bequeathed to her husband in Item 2 as remained undisposed of at his death. In Item 4 the testatrix devised and bequeathed the residue of her property to her husband.

Hastings Sandidge Warren executed his will on the same day and the wills of the wife and husband were attested by the same witnesses.

The record shows that Hastings Sandidge Warren died sometime prior to the year 1948. Mrs. Mary Elizabeth Warren died May 10, 1955.

The property involved in the will contest is a house and lot on Jackson Street, in Yazoo City, of the value of several thousand dollars which, under the will, goes to the appellee. If the will should be of no effect the property would go to the appellants as heirs at law and next of kin of Mrs. Mary Elizabeth Warren, deceased.

On June 29, 1955, the appellants filed a petition in the chancery court asking for the appointment of Hugh E. McCormack as administrator of the estate of Mrs. Mary Elizabeth Warren, deceased. In their petition the petitioners stated that they were the only heirs and next

of kin of the decedent. The petitioners also alleged that after the death of Mrs. Warren the duplicate copies of the will dated April 23, 1945, were found among her papers, but the signature and date on the original instrument had been torn through by six separate tears, and the will had in truth and in fact been destroyed, cancelled, and revoked by the testatrix. The petitioners asked that letters of administration be granted to Hugh E. McCormack and that process be issued for Benjamin Hugh Warren commanding him to appear and answer the petition if he desired to do so, and that a proper issue be made up and tried for the purpose of determining the validity or invalidity of said will. Benjamin Hugh Warren appeared and filed an answer to the petition, and in his answer denied that the will had been destroyed or revoked. He made his answer a cross-bill and asked that the will be admitted to probate.

The cause was heard before the chancellor at the regular October 1955 Term of the court.

Proof of the due execution of the will by the testatrix on April 23, 1945, was made by one of the two subscribing witnesses, who also identified a photostat copy of the will executed by Hastings S. Warren on the same day. Mrs. Benjamin Hugh Warren also testified as a witness for the proponent. She testified that Mrs. Mary Elizabeth Warren had resided in the City of Jackson during the last few years of her life, and that she had seen Mrs. Warren once or twice a month during that time; that she called to see her often and took her automobile riding; that on one occasion during the month of September 1954, while she and Mrs. Warren were driving through the Eastover Subdivision, Mrs. Warren expressed a wish that she and her husband would buy a piece of property, and said to her, ''I want to know where my money is going. * * * You are going to be taken care of; I have seen to that.'' The witness also stated that while Mrs. Warren was in the hospital, five or six weeks before her

death, she said to her, ''I don't want you to worry about anything. I have seen that you are taken care of. * * * I have made a will.''

Judge Louis J. Wise of Yazoo City testified as the main witness for the contestants. Judge Wise stated that he had represented Mrs. Mary Elizabeth Warren as a lawyer and as a business adviser during a long period of time, while she was a resident of Yazoo City, and that Mrs. Warren told him sometime during the year 1948 that she had made a will while he was in the military service, and that she wanted to make another will. He asked her whether the will that she had made was in existence. She said, ''Yes, and how do I go about destroying it?'' His answer was, ''Just tear it up and throw it away.'' Mrs. Warren then said to him, ''Well, I don't want it, and I will be by your office later and we will make a will the way I want it.'' She then discussed Mr. Hugh Warren, and ''she particularly wanted to make a new will because Mr. Warren, it looked like, was trying to take some of her property away from her in her lifetime.'' Judge Wise stated that Mrs. Warren later came to his office and he prepared a will for her. She told him that she had destroyed the other will, and that she no longer had a will. When Judge Wise delivered the new will to her, he told her to take it to the trust officer of the Delta National Bank and he would see that the will was properly executed. Judge Wise saw Mrs. Warren again sometime thereafter and she told him that she had not signed the new will but was going to sign it, and that she had it in a good safe place. At a still later date she told Judge Wise that she had ''fixed it.'' But the will that Judge Wise prepared for her was never executed by Mrs. Warren.

Hugh E. McCormack testified that he found the torn and the carbon copies of the will offered for probate among Mrs. Warren's valuable papers and effects, which

were kept in her room in the home on the Old Canton road where she resided at the time of her death.

Mrs. Effie McCormack Kent, a second cousin of the testatrix was called to testify as a witness for the proponent in rebuttal. Mrs. Kent testified that she lived in the home with Mrs. Warren from 1945 to. 1950, while Mrs. Warren was living in Yazoo City, and that after Mrs. Warren moved to Jackson she spent much of her time in Mrs. Kent's home in Yazoo City. Mrs. Kent stated that sometime during the year 1948 a strained relation developed between Mrs. Warren and Mr. and Mrs. Hugh Warren as a result of the sale by Mrs. Warren to the. Board of Trustees of the Yazoo City Schools of a valuable piece of real estate which she owned in Yazoo City. Mr. and Mrs. Hugh Warren came over to Yazoo City to see Mrs. Warren about the matter and wanted their part of the money. Mrs. Warren became very much upset and told Mrs. Kent that she would have to change her will, that she did not think that she should leave Mr. Hugh Warren anything. But Mrs. Kent stated that after Mrs. Warren moved to Jackson her feeling toward Mr. and Mrs. Hugh Warren underwent a change and during the last few years of her life Mrs. Warren had spoken of Mr. and Mrs. Hugh Warren as being very considerate of her. Mrs. Kent stated that Mr. and Mrs. Hugh Warren brought Mrs. Warren to her home in Yazoo City on at least three separate occasions; that Mrs. Warren spent several months in her home during the years 1953 and 1954, and during that time Mrs. Warren often spoke of Mr. and Mrs. Hugh Warren's kindly consideration of her, of their taking her for automobile rides and things of that sort; and that Mrs. Warren told her that she had to remember Mr. and Mrs. Hugh. Warren in some way.

The chancellor found that there was some ill feeling between Mrs. Warren and Mr. Hugh Warren sometime along about the year 1948 concerning the sale of the

school property, but that ill feeling had subsided, and the testatrix and Mr. Hugh Warren's family were on good terms for a number of months prior to her death, and that on at least two occasions the testatrix had made statements in the presence of witnesses which indicated that she was leaving some portion of her estate to the appellant. The chancellor found that the evidence offered on behalf of the contestants was insufficient to show that the will dated April 23, 1945, had been revoked. The chancellor stated that in his opinion there may have been a time after the sale of the Yazoo City school property when the testatrix felt that she wanted to change the provisions of her will, and that her feelings were such that she actually did the tearing; but there was strong evidence that she did not intend to revoke the document because she kept it among her effects until the time of her death; she kept and had in her possession at the time of her death the duplicate original; she had had prepared a will which would have revoked the will offered for probate if she had executed it, and this latter instrument was in existence for a period of seven years prior to her death, yet she never executed it. The chancellor found that the instrument offered for probate had not been revoked, and the chancellor admitted the will to probate as the last will and testament of the decedent.

The appellants' attorneys argue only one point as ground for reversal of the decree of the lower court and that is, that the chancellor erred in his finding that the will dated April 23, 1945, had not been revoked by the testatrix by tearing with intent to revoke the same, and that the will was a valid will.

■■ ■ But we think that it cannot be said that the chancellor erred in holding that the proof was insufficient to show a revocation of the will.

The English Statute of Frauds, 29 Car II, c 3, par. 6, provided that a will might be revoked "by burning, canceling, tearing or obliterating it." The later English

Statute, 1 Vict, c 26, par. 20, which is applicable to wills bequeathing personalty as well as to wills devising real estate, provides for revocation "by burning, tearing or otherwise destroying the instrument." 57 Am. Jur., 343, Wills, par. 493.

The Mississippi Statute, Section 658, Code of 1942, provides that: "A devise so made, or any clause thereof, shall not be revocable but by the testator or testatrix destroying, canceling, or obliterating the same, or causing it to be done in his or her presence, or by subsequent will, codicil, or declaration, in writing, made and executed; * * *."

In support of their contention that the will dated April 23, 1954, was revoked the appellants' attorneys cite the cases of Bohanon v. Walcot (Miss.), 1 How. 336; Tucker v. Whitehead, 59 Miss. 594, and Whitehead v. Kirk, 104 Miss. 776, 61 So. 737. But none of those cases dealt with wills which had been executed in duplicate, and in none of those cases did the act of revocation consist of a mere tearing without an actual severance of any part of the instrument.

In the Bohanon case the record showed that the testator, two months prior to his death, expressed an intention to revoke his last will and dispose of his effects by a new will. For this purpose he applied to William Bacon to write "a new will", presenting at the same time the will of 1831, in which there were interlineations and erasures, which he pointed out, and objected to other provisions of the will. He stated to Bacon that he had done away with that will, and that the interlineations and erasures were made by his directions, and he delivered to Bacon the will, interlined and erased as above described, to be used as a guide or memorandum in drafting a new will. The court found that the will was interlined and erased in several places, by the testator's direction, with the intention to revoke, and that the testator's intention to destroy the will, clearly expressed by himself,

was rendered still more certain by the delivery of it to Bacon for the purpose above stated. In Tucker v. Whitehead, 59 Miss. 594, the instrument offered for probate had been found among the private papers of the decedent after his death, and was perfect in all its parts, except that the name had been torn from it. The Court in its opinion in that case said: "The law makes the destruction or mutilation of a will by the testor sufficient evidence of a design to revoke it * * *." In Whitehead v. Kirk, supra, the Court referred to the opinion in Tucker v. Whitehead, supra, and said that where a will is found among the deceased's papers, with the signature torn off, "the law presumes that this was done by the testator, and done animo revocandi."

It can be readily seen that the facts in each of the above mentioned cases were entirely different from the facts in the case that we have here, and the decisions rendered in those cases are not controlling here. The will that we now have before us was executed in duplicate. Both executed copies of the will were in the possession of the testatrix and were found among her valuable papers after her death. The original or ribbon copy only had been torn. There were no interlineations or erasures as in the Bohanon case, and the instrument was never delivered to Judge Wise or any one else. Neither had the signature of the testatrix been torn off, as in Tucker v. Whitehead, supra. The executed carbon copy of the will had not been torn or mutilated in any manner.

Revocation of a will is a matter of intent, except in those instances in which it occurs by operation of law from a change in circumstances subsequent to the execution of the will. Even in those cases, reference is often made to the so-called "presumed intent" of the testator. 57 Am. Jur., 322, Wills, par. 459.

"The intent to revoke is essential to a revocation by act of the testator. In order that an act shall have the effect of revoking a will, the intention to revoke must

appear clearly and unequivocally; a will is not revoked by any act of spoliation or destruction not deliberately done animo revocandi. * * * Even where one of the statutory methods for revoking a will is followed by the testator, his act is ineffectual unless his intent thereby to revoke or alter the will appears. ██ ██ The intent may be inferred from the nature of the act, or it may be shown by extrinsic evidence, but it must in some competent way be made to appear. The mere act of canceling a will or a part thereof is of no legal effect, unless it is done animo revocandi. Even a mutilation of the will does not constitute a revocation where it appears that there was no intent to revoke." 57 Am. Jur., 343, Wills, par. 494; and cases cited.

In the case of Phinizee, et al. v. Alexander, et al., 210 Miss. 196, 49 So. 2d 250, this Court held that when a testator has executed duplicate wills either of the duplicates may be probated as possessing the elements of a valid will. The court also held in that case that when a testator has executed his will in duplicate, the intentional destruction or mutilation by him of one of the duplicates raises the presumption that he intended thereby to revoke the will; that the presumption is stronger when he has in his possession only the duplicate destroyed, but weaker when he possesses both duplicates; and in either event the so-called presumption is an inference of fact, not a conclusion of law, and is therefore rebuttable; and that the presumption in that case was rebutted when it was shown that after the destruction of one of the duplicates the testator exhibited the other duplicate, declared it to be his will and thereupon restored it to his box where it remained until his death.

In the English case of Roberts v. Round (1830), 3 Hagg. Ecc. Rep. 548, 162 Eng. Reprint, 1258, which is referred to in Phinizee v. Alexander, supra, both originals of a duplicate will were found in the possession of the testatrix at her death, one of them partially de-

stroyed, the other unharmed, and it was held that the will was not revoked and should be admitted to probate. The Court in discussing the legal presumptions relating to the existence of two executed copies of the will, both in the possession of the testatrix, and the partial mutilation of one copy, said: "What upon the face of the instrument are the sound legal construction and presumptions? Suppose that the mutilated instrument alone had been found and that no duplicate had ever existed. This mutilation of the first sheet, leaving the signature untouched, would not be a total revocation; it would be a revocation of those particular devises only (Larkins v. Larkins, 3 B. and P. 16); but there being two papers both in the deceased's possession, the presumption of law would be that by the preservation of one duplicate entire she did not intend a revocation of these particular devises, otherwise she would have mutilated both duplicates. The construction then to be put upon this act of mutilation (for it clearly appears to have been her own act) is, that at most, it was a preparation for a projected alteration, to which she had not finally made up her mind, or which she had abandoned; and therefore she preserved entire the duplicate which she had always retained in her own possession and on which she had written the word 'mine' ". See also Pemberton v. Pemberton (1807), 13 Ves. Jr. 291, 33 Eng. Reprint, 303; Strickland v. Strickland (1849), 8 C.B. 724, 137 Eng. Reprint, 693.

We think there was no error in the chancellor's finding that there had been no revocation of the 1945 will in the case that we have here. Judge Wise testified that the testatrix told him that the will that she had made in 1945 was still in existence, and she asked him, "How do I go about destroying it?" Judge Wise said to her, "Just tear it up and throw it away." The testatrix then said, "Well, I don't want it. I will be by your office later and we will make a will the way I want it." But the testatrix did not "tear up" and "throw away" the will that

she had executed in 1945, as Judge Wise had advised her to do, if she wished to destroy it. She did not execute the new will that Judge Wise prepared for her, but kept both copies of the 1945 will in her possession until her death. It seems clear to us that the testatrix never finally made up her mind to revoke the will that she had made in 1945; and whatever thought she may have had in 1948 about revoking the will and executing a new will omitting the devise to the appellant was abandoned. If the testatrix had intended to destroy the will and die intestate, it is not unreasonable to assume that she would have torn the will up and thrown it away as Judge Wise had instructed her to do, instead of retaining both copies of the will in her possession until her death seven years later. Whatever projected alteration she may have had in mind in 1948 she seems to have abandoned when she decided not to "tear up" and "throw away" the will that she had executed in 1945, and not to execute the new will which Judge Wise had prepared for her.

██ █ The chancellor in this case was the trier of the facts, and it is well-settled that the chancellor's finding on the facts cannot be disturbed by us unless manifestly wrong. We think that it cannot be said that the chancellor's finding in this case was manifestly wrong. The decree of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.