# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00238-SCT

*IN THE MATTER OF THE ESTATE OF CLYDE V. WOODFIELD, DECEASED, AND IN THE MATTER OF THE CONSERVATORSHIP OF MICHAEL A. WOODFIELD: JOHN V. WOODFIELD*

*v.*

*S H A R O N   M c C O Y   W O O D F I E L D , ADMINISTRATRIX OF THE ESTATE OF CLYDE V. WOODFIELD, DECEASED, AND ALFRED R. KOENENN, GUARDIAN AD LITEM AND TEMPORARY CONSERVATOR OF MICHAEL A. WOODFIELD*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2003 |
| TRIAL JUDGE: | HON. WILLIAM L. GRIFFIN, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEYS FOR APPELLEES: | TIMOTHY LEE MURR |
| | ALFRED R. KOENENN |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | THE JUDGMENTS OF THE COURT OF APPEALS AND THE CHANCERY COURT ARE REVERSED AND THIS CASE IS REMANDED TO THE CHANCERY COURT OF HARRISON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION - 11/01/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. Does the withdrawal from probate of a will revoking prior wills reinstate a prior will? The Court of Appeals found that the withdrawal from probate of a 2001 will, which contained a provision "hereby revoking all previous wills and codicils," revived a 1973 will. Pursuant to Mississippi Rules of Appellate Procedure 17(h), we have limited the question on review via a grant of certiorari. On this issue, we find that a proper determination must be made as to whether the 2001 will was validly made and executed. If the 2001 will was validly made and executed, the revocation clause is effective and revokes the 1973 will, and the 2001 will would thus be admitted to probate. We have no law in Mississippi which permits abandoning the testator's intent and completely withdrawing a will which was validly made and executed, nor do we believe that such rule of law should be pronounced. On the other hand, if the 2001 will was not validly made and executed, then the 1973 will shall be probated because the revocation clause contained in the 2001 will has no effect. Therefore, we are compelled to reverse the judgments of the Court of Appeals and the chancery court, and we thus remand this case to the Chancery Court for the First Judicial District of Harrison County for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Clyde V. Woodfield and Sharon Jeanne McCoy Woodfield were married in early 1966. At the time of their marriage, both Clyde and Sharon had children by previous marriages – Clyde had John Vernon Woodfield, and Sharon had David Lane and Kelly Sevier. All three children are now adults. The only child born to the marriage between Clyde and Sharon is Michael Allen Woodfield, who was born on November 7, 1967.

¶3. On January 11, 1973, Clyde executed his last will and testament, which in essence devised and bequeathed all of Clyde's real and personal property to his wife, Sharon, and his two children, John and Michael. The will was just over three pages in length and contained six Articles. Briefly stated, Article II devised and bequeathed to John and Michael each an undivided one-half interest in Clyde's one-half interest in the Sahara Motel on Highway 90 in Harrison County; Article III devised and bequeathed all the rest and residue of Clyde's estate to Sharon, or alternatively, to John and Michael, if Sharon predeceased Clyde; Article IV contained alternative devises and bequests to Sharon, John and Michael, in the event that Clyde did not have any ownership interest in the Sahara Motel at the time of his death; Article V appointed Clyde's father, Ozy Woodfield, as the executor; and, since Michael was then a minor, Article VI appointed Sharon (or alternatively, Ozy, if Sharon was unable to serve) as Michael's guardian.

¶4. In January, 1997, at the age of twenty-nine, Michael was in a serious accident which rendered him totally incapacitated, thus requiring around-the-clock care. A court-supervised conservatorship was thereafter established for Michael, and John was appointed as the conservator of Michael's person and estate.

¶5. On September 26, 2001, Clyde appeared at the law office of his son, John, a practicing attorney in Harrison County, and sought assistance from a paralegal in revising his will. John was evidently not present in his law office when Clyde appeared. According to Nick Thornton, John's paralegal, and Danny Leggett, Clyde's friend, Clyde wanted to remove all references to Michael in his will in order to keep the government from seizing farm assets

3

which otherwise would be given to Michael under the 1973 will. Thornton and Leggett would later testify that Clyde stated that he was satisfied that Sharon and John would take good care of Michael. The will which was prepared pursuant to this office visit was basically the same as the 1973 will, except that the 2001 will acknowledged Michael's serious injuries and the establishment of a conservatorship; removed any references to Michael as a devisee or legatee under the will; and, appointed Sharon, or alternatively, John, as the executrix or executor, respectively. However, of significant import is the fact that this will provided in the first paragraph, *inter alia*, that Clyde did "declare this to be my Last Will and Testament, hereby revoking all previous wills and codicles (sic) as follows, to-wit." This will was executed by Clyde on September 26, 2001, and witnessed the same day by Thornton and Leggett.

¶6. Three days later, on September 29, 2001, Clyde died, survived by Sharon, John and Michael. On October 9, 2001, Sharon, through John, as the attorney, filed a petition to have the 2001 will admitted to probate in the Chancery Court for the First Judicial District of Harrison County. The will was admitted to probate, and Sharon was appointed as the executrix of the estate. In September 2002, the special chancellor[1] removed John and substituted Alfred Koenenn as temporary conservator and guardian ad litem for Michael. On October 21, 2002, Michael's new guardian filed a petition contesting the 2001 will. This

_____

[1]By September, 2002, the chancellors of the Eighth Chancery Court District, of which Harrison County is a part, had sua sponte recused themselves since this litigation involved a local attorney as a party; therefore, this Court entered an order appointing William L. Griffin, Jr., as Special Judge to preside over these proceedings.

action prompted Sharon to file a petition to have the 1973 will admitted to probate, notwithstanding the fact that she had already filed a petition to have the 2001 will admitted to probate.[2]

¶7.     By agreement of the parties, the trial was divided into two phases. The first phase was conducted on March 18-21, 2003; and, the second phase was conducted on May 12-13, 2003,[3] and October 13-17, 2003. A *nunc pro tunc* order entered on April 25, 2003, reveals the special chancellor's rulings on various pre-trial motions which were heard immediately prior to the commencement of the trial on March 18, 2003. In this order, the special chancellor ruled, *inter alia*, that because of the guardian ad litem's filing of a petition contesting the 2001 will, John's filing of a motion to withdraw the 2001 will, and no objection being lodged by "any party in interest or any heir at law of the decedent," the petition to probate the 2001 will was "dismissed with prejudice." Likewise, since the 1973 will did not name a successor executor in the event Clyde's father was unable to serve, the special chancellor appointed Sharon as Temporary Administrator C.T.A. of the 1973 will. While this order also contained other findings and rulings on other issues, since these issues

---

[2]Sharon testified she met John at the courthouse the day that the 2001 will was presented for probate; however, according to Sharon, she handed John the 1973 will to be probated. Sharon stated she later found out that it was the 2001 will which had been submitted for probate. Sharon denies ever knowing about the existence of the 2001 will until after it was probated.

[3]The final judgment entered on November 24, 2003, states that this part of the trial was conducted on May 18-19, 2003; however, the official court reporter's transcript filed with us reveals the dates to be May 12-13, 2003.

5

are not before us today, there is no need to discuss the other provisions of this order. Likewise, on April 25, 2003, a nine-page *nunc pro tunc* judgment was entered reflecting the special chancellor's rulings on the issues presented in the first phase of the trial.

¶8.    Continuing with the procedural history of this case, we now refer to the Court of Appeals' opinion:

> The parties agreed to a two-part trial. The first part, which started the day of the pretrial decisions on March 18, considered three issues. These were the chancellor's rulings: (1) the 2001 will, after being withdrawn as an instrument that could dispose of property, had no further effectiveness and therefore did not revoke all prior wills; (2) Clyde Woodfield did not die intestate; and (3) though the original of the 1973 last will and testament was not produced, that will was in effect after the withdrawal of the 2001 will and should be admitted to probate as his last will and testament. As a penalty for frivolous litigation by John Woodfield in offering the 2001 will for probate, the chancellor awarded fees to Sharon Woodfield's attorney in the amount of $22,155.78. Michael Woodfield's guardian and conservator was awarded $15,220.78 in fees and expenses. The order was filed on April 25, 2003.
>
> On June 26, 2003 John Woodfield filed a motion seeking Chancellor Griffin's recusal, which the judge denied but also certified for interlocutory appeal. The sole basis for recusal was that Alfred Koenenn, the guardian for Michael Woodfield, had made a $500 contribution to Chancellor Griffin's unsuccessful 2002 election campaign. On September 5, 2003, a three-justice panel of the Supreme Court found that the chancellor "did not abuse his discretion in determining that a reasonable person knowing all the circumstances would not question his impartiality." After making that finding, the court denied John Woodfield's petition for interlocutory appeal.
>
> On October 13, 2003, the second part of the trial commenced. The three issues presented to the chancellor were the testator's meaning in the clause in his 1973 will that referred to "[m]y homestead," which was devised to his wife, Sharon Jeanne McCoy Woodfield; whether to accept John Woodfield's testimony that his monetary debts to Clyde Woodfield had been forgiven prior to the latter's death; and the ownership of certain personal property, which is no longer an issue.

6

> The chancellor ruled that the term "homestead" in the will encompassed a 324-acre farm. The estate was awarded $261,558.15 against John Woodfield for various debts owed his father. John Woodfield was also ordered to pay $7,710 in attorneys' fees owed by Michael Woodfield's guardian ad litem, and $7,500 in attorneys' fees owed by Sharon Woodfield.

*In re Estate of Woodfield v. Woodfield*, 2006 Miss. App. LEXIS 872, \*\*4-6, ¶¶ 7-10 (Decided, November 21, 2006; *R'hg denied*, May 1, 2007, at 2007 Miss. App. LEXIS 316).

¶9. A sixteen-page final judgment memorializing the special chancellor's findings and rulings was entered on November 24, 2003,[4] and John Woodfield thereafter filed a motion for reconsideration which was denied by the special chancellor. John timely appealed from the chancery court's judgments of April 25, 2003, and November 24, 2003, as well as the special chancellor's order denying John's motion for reconsideration. On appeal, this Court assigned this case to the Court of Appeals.

### FACTS AND PROCEEDINGS IN THE COURT OF APPEALS

¶10. The Court of Appeals addressed the following issues: (1) voiding of the 2001 will; (2) probate of the 1973 will; (3) interpretation of reference to "my homestead" in the 1973 will; (4) John's debts to the estate; (5) attorneys' fees; (6) trial judge's examination (view) of Woodfield Farms property without a court reporter present; and (7) recusal of the trial judge. On March 21, 2006, the Court of Appeals handed down a 7-1-2 decision reversing the chancery court judgment and remanding this case to the chancery court for a new trial; however, Sharon Woodfield filed a motion for rehearing, and the Court of Appeals granted

---

[4]The final judgment reveals that the estate matter and conservatorship matter were consolidated for trial purposes, by order dated September 4, 2002.

7

the motion for rehearing, withdrew the original opinion, and substituted an opinion which affirmed the special chancellor in all respects except on the issue of attorney's fees, which issue was remanded to the trial court for further proceedings consistent with the opinion. *In re Estate of Woodfield v. Woodfield*, 2006 Miss. App. LEXIS 872 (November 21, 2006). This 5-3-2 opinion drew a dissent by Presiding Judge Lee, and the dissent was joined by Presiding Judge Myers and Judge Barnes. After the Court of Appeals denied John's motion for rehearing, John filed with us his petition for writ of certiorari in which he requested we consider five issues, which we restate here for clarity: (1) whether Judge Leslie Southwick's participation in this case on rehearing was proper;[5] (2) whether the special chancellor should have been disqualified from hearing the case; (3) whether the special chancellor erred in ruling that the term "homestead" encompassed the entire 324 acres of real property devised to Sharon; (4) whether the special chancellor erred in ruling that the withdrawal of the 2001 will revived the 1973 will; and (5) whether the special chancellor erred in awarding attorneys' fees. By order entered on July 26, 2007, we granted, in part, John's petition for writ of certiorari. *In re Estate of Woodfield v. Woodfield*, 959 So. 2d 1051 (Miss. 2007). We chose only to address the issue of "what effect the withdrawal from probate of a will

---

[5]The basis for asserting this issue is that due to Judge Southwick's extended military leave of absence, he was not present for oral arguments in this case.

8

executed in 2001 had on a . . . will executed in 1973." *See* M.R.A.P. 17(h) (upon a grant of certiorari, this Court "may limit the question on review").[6]

## DISCUSSION

¶11.   We restate the sole issue we have chosen to address.

**WHETHER THE WITHDRAWAL OF A PROBATED WILL CONTAINING A CLAUSE REVOKING ALL PREVIOUS WILLS REVIVED AN EARLIER WILL.**

¶12.   Since the Court of Appeals discussed ***Parker v. Broadus***, 128 Miss. 699, 91 So. 394 (1922), to determine whether the 1973 will was revived, we will now discuss this case in some detail and show why today's case is distinguishable from ***Broadus***.

¶13.   In ***Broadus***, a testator who had ten children executed a will leaving his estate to only two of his children.  After the death of the testator, the two beneficiaries under the will entered into an agreement with the testator's other eight children,

> whereupon the beneficiaries in the will *renounced the will* and agreed with the other children of the deceased that the property should be divided equally between the said children, counting the advancements made to some of the children by the deceased in his lifetime so as to equalize the estate of each child with that received from the father's estate by the other children.

***Broadus***, 128 Miss. at 705-06, 91 So. 394. (Emphasis added).   In addition to the renunciation, the agreement provided that the two beneficiaries under the will were to be

---

[6]We also have before us the response to John Woodfield's petition for writ of certiorari filed by Sharon Jeanne McCoy Woodfield, individually and in her various capacities, urging this Court to affirm the judgment of the Court of Appeals; John's motion to strike Sharon's response to his cert petition; and Sharon's response to John's motion to strike.  Our decision today render's moot John's motion to strike.

9

appointed administrators of the deceased. *Id.* The beneficiaries filed a petition in the chancery court and caused this written agreement to be made an exhibit to the petition. *Id.* In response to the petition filed by the beneficiaries, the person who was named as the executor under Broadus's will filed a petition to have the will admitted to probate and to be appointed executor and for letters of administration to be issued to him as executor. *Id.* After the chancellor had an opportunity to review the parties' petitions, the chancellor approved the renunciation of the will and appointed the beneficiaries the administrators of the estate. *Id*. Thus, the executor under the will appealed to this Court on the issue of "whether a family settlement entered into between parties all competent to agree, including all of the beneficiaries of the will, can dispense with the probation of the will and renounce the will so as to make it ineffective as such." *Broadus*, 128 Miss. at 706, 91 So. at 394-95. On this issue, this Court stated:

> It is true the testator has a right to dispose of his property in the manner that he did dispose of it and to make such disposition not prohibited by law as may suit his purpose. It is equally true, however, that he cannot compel the beneficiaries in his will to accept the will or the property thereunder devised and they have the right to renounce the will where it contains no trust or other limitation upon the property devised or bequeathed by the will, and ***when a will is renounced the effect of the renunciation relates back to the time the will became effective so as to make it void*** where, as in this case, the property is devised unconditionally and absolutely to the beneficiaries.

*Broadus*, 128 Miss at 707, 91 So. at 395 (emphasis added).

¶14.    In interpreting and applying *Broadus*, the Court of Appeals found that upon the petition to withdraw the 2001 will, and that petition's dismissal with prejudice, the 2001 will

10

was voided for *all* purposes, which included the revocation clause. Specifically, the Court of Appeals stated:

> This holding means that the disposition of the estate is as it would have been the day before the withdrawn will was executed. The dissent is correct that in ***Broadus*** there was no prior will. Still, that court chose to say that the will was "void," not just withdrawn. The act of its execution is canceled, making all terms of the will void by the beneficiaries' enforceable agreement not to probate.
>
> . . . .
>
> Once that is done, testator intent is lost.
>
> . . . .
>
> Our best choice about how to proceed once the last will is withdrawn by all beneficiaries is where the Supreme Court directs us. The cancellation "relates back to the time the will became effective so as to make it void," a statement that may be broader than the facts of the opinion in which it appears but persuasive all the same. ***Broadus***, 128 Miss. at 707, 91 So. at 395. The 2001 language revoking all prior wills never came into effect.

*In re Woodfield*, 2006 Miss. App. LEXIS 872, **21-23, ¶¶ 26, 27, 30.

¶15.    The key difference between the case *sub judice* and ***Broadus*** is that in ***Broadus*** the beneficiaries to the will *renounced their bequest under the will* and then entered a private agreement detailing how the property should be divided. In today's case, the beneficiaries are *attempting to withdraw a will* which may or may not have been validly made and executed. Beneficiaries are not entitled to completely disregard the testator's intent and have a validly-made-and-executed will withdrawn completely from probate. It is true that a beneficiary may choose to renounce his or her bequest under the will, but renunciation and withdrawal do not equate to the same outcome. The term renounce means "[t]o give up or abandon formally (a right or interest); to disclaim," Black's Law Dictionary 1299 (7th ed. 1999), while the term withdrawal means "[t]he act of taking back or away; removal." *Id*. at

11

1595. Thus, when a beneficiary renounces a bequest under a will, that beneficiary formally gives up a right to property under the will. Whereas when a beneficiary attempts to withdraw a will, that beneficiary does not seek formally to give up a right under the will, but to have the testator's estate distributed contrary to the testator's intent. Such action is impermissible under Mississippi law, and thus we are constrained to reverse and remand the judgments of both the Court of Appeals and the chancellor.

¶16. On remand, if the Chancellor determines that the 2001 will was validly made and executed, Mississippi case law is clear in regard to revocation clauses. A testator who wishes to revoke a will may do so by either: (1) destroying, canceling, or obliterating the will, or (2) "by subsequent will, codicil, or declaration, in writing, made and executed." Miss. Code Ann. § 91-5-3 (Rev. 2004)." *In re Woodfield* at *36, ¶54 (Lee, P.J., dissenting). However, in considering the revocation criteria, essential to a revocation is that the testator must have the *intent* to revoke the will. *McCormack v. Warren*, 228 Miss. 617, 628, 89 So. 2d 702, 706 (1956). Presiding Judge Lee also referred to a publication by University of Mississippi Law Professor Robert A .Weems. *Id.* at **36-37, ¶54 (Lee, P.J., dissenting). As stated in Robert A. Weems, WILLS & ADMINISTRATION OF ESTATES IN MISSISSIPPI § 5:3 (3d ed. 2003):

> Two very important rules of Mississippi law should be noted with regard to a revocation clause. First, it is effective to revoke prior wills as soon as the instrument which contains the clause is validly executed. Even though a will in general is ambulatory and not effective until the testator's death, this is not true of the revocation clause. The most important consequence of this rule is that the revocation of the subsequent writing would not operate to revive the will it revoked. Second, a clear, unequivocal statement of revocation in the

12

> validly executed subsequent will is conclusive on the matter of the testator's intent to revoke the prior will.

*Id*. (Lee, P.J., dissenting). Thus, a prior will may be effectively revoked by a revocation clause in a later will, and "an express revocation clause in a will revoking all former wills when duly executed and attested according to law is unequivocal and conclusive of the intent of the testator." ***Crosby v. Alton Ochsner Medical Foundation***, 276 So. 2d 661, 669 (Miss. 1973). Additionally, Mississippi law as far back as 1855 has stated that "'a will duly executed according to the statutes, though prevented from taking effect in consequence of some matter dehors the will, as the incapacity of the person to whom the disposition is made to take, is a revocation of a former will.'"[7] ***Crosby***, 276 So. 2d at 669 (quoting ***Vining v. Hall***, 40 Miss. 83, 107 (1866)). *See also* ***Hairston v. Hairston***, 30 Miss. 276 (1855).

¶17. Although ***Hairston*** is not on all fours with today's case, we find it to be analogous for the purposes of today's discussion. Concerning express revocation clauses contained in subsequent wills, this Court stated in ***Hairston***:

---

[7]The statute applicable in ***Hairston*** stated: "[N]o devise so made, or any clause thereof shall be revocable, but by the testator or testatrix destroying, cancelling or obliterating the same, or causing it to be done in his or her presence, or by a subsequent will, codicil, or declaration in writing made as aforesaid." The current statute, Mississippi Code Annotated section 91-5-3 (Rev. 2004), states in pertinent part: "A devise so made, or any clause thereof, shall not be revocable but by the testator or testatrix destroying, canceling, or obliterating the same, or causing it to be done in his or her presence, or by subsequent will, codicil, or declaration, in writing, made and executed." Thus, just as in today's case, in order for a will or codicil or declaration to be effective for the purpose of revoking a former will or any clause thereof under the above statute, the will or codicil or declaration must be executed with the same formalities which are required in the execution of a will.

In cases like the one at bar, in which the will contains an express clause of revocation, and upon the face of it there is nothing from which it could be inferred that the testator intended only to revoke conditionally, and in subserviency to some other purpose; if the mere fact, that the bequests in the will, not from any defect in its structure or attestation, but from some extraneous circumstance, have failed, could authorize the presumption of a conditional or dependent revocation, – an unequivocal clause of revocation in a will duly attested would stand precisely on the same footing with an act of destruction, cancellation, or obliteration, which are equivocal in their very nature, – amount to but prima facie evidence of an intent to revoke, and depend exclusively for their efficacy upon the quo animo with which they are performed.

It will not be denied, that a declaration made and attested in the mode prescribed by the statute for the execution of wills, the object of which was the revocation of a prior will, would be conclusive of such intention. And, therefore, in any controversy which might arise, in reference to the efficacy of the instrument as an act of revocation, it would be incompetent to introduce evidence to prove that the declaration was not designed to operate as an absolute, but only as a conditional revocation, relative to, and dependent upon the happening of some event. Hence it is difficult to conceive, upon what principle a clause of revocation, unequivocal and unconditional, in a will duly attested, would be less conclusive as to the intention to revoke, or less efficacious for that purpose, because the devises have failed, in consequence of the incapacity of the devisees to take. The power to revoke any disposition of his estate, made by will, is expressly given by law to the testator: but any act of revocation, to be efficacious, must be performed in some one of the modes prescribed in the statute; in each of which, the intention to revoke – the essential ingredient in an act of this character – must be clear and unequivocal, and manifested in the precise manner directed in the act. A will, executed with all the requisite formalities, and containing an express clause of revocation, although from some cause dehors the instrument, it may be inoperative as a testamentary act, unquestionably fulfils every requisition of the statute, whether it be regarded as a will, or as a declaration in writing designed simply as a revocation.

An instrument propounded as a revocation, if it be in form a will, must be perfect as such, and be subscribed and attested as required by the statute. Hence, an instrument intended to be a will, but failing of its effect as such, on account of some imperfection in its structure, or for want of due execution, cannot be set up for the purpose of revoking a former will.

14

30 Miss. at 301-303. (Citations omitted).

¶18.    Therefore, we come to but one logical conclusion – if Clyde Woodfield intended to revoke his 1973 will, we must honor his intentions if he complied with the requisite statute. *See* Miss. Code Ann. § 91-5-1 (Rev. 2004). To do otherwise would wholly undermine our case law on wills and revocations. Clyde Woodfield's 2001 will contained an express revocation clause which stated, "this to be my Last Will and Testament, hereby revoking all previous wills and codicles (sic)." Therefore, Clyde complied with **Hairston** by setting out in the 2001 will an unequivocal and unconditional clause which clearly conveyed his intent to revoke all previous wills and codicils.

¶19.    On the other hand, if the chancellor determines that the 2001 will was not validly made and executed, Clyde Woodfield's 1973 will should be probated.

¶20.    In the end, for the foregoing reasons, we are compelled to reverse the judgment of the Court of Appeals as to that court's determination that the 1973 will should be probated, which action on our part has the practical effect of likewise reversing the chancery court judgment and remanding the case for further proceedings consistent with this opinion. On remand, the chancellor shall determine whether the 2001 will was validly made and executed. After such a determination has been made, if the chancellor finds that the 2001 was validly made and executed, the chancellor shall re-admit the 2001 will to probate. However, if the chancellor determines that the 2001 will was not validly made and executed, then Clyde Woodfield's 1973 will shall be re-admitted to probate.

**CONCLUSION**

¶21. For the reasons stated, the judgments of the Court of Appeals and the chancery court are reversed and this case is remanded to the Chancery Court for the First Judicial District of Harrison County for further proceedings consistent with this opinion.

¶22. **THE JUDGMENTS OF THE COURT OF APPEALS AND THE CHANCERY COURT ARE REVERSED AND THIS CASE IS REMANDED TO THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**