BARNES, J.,
 

 for the Court:
 

 ¶ 1. Following the death of Lura Foster Carpenter (Lura), her three surviving children — Bobby Dean Carpenter (Bobby), Jerry Wayne Carpenter, and Nancy Lynn Carpenter Dempsey — filed a petition to probate Lura’s will, which contained several handwritten interlineations and markings. Autumn Cosby (Autumn), the daughter of Lura’s deceased child, challenged the probate of the will claiming that the handwritten markings showed that Autumn was to receive a child’s share of the estate. The chancellor found that, based upon the handwritten changes to the will, Lura’s original will was totally revoked and that Autumn should inherit a child’s share through the laws of intestacy. Bobby now appeals the chancellor’s judgment. Finding error, we reverse and remand for further proceedings by the chancery court consistent with this opinion.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Upon her death on May 27, 2007, Lura left a last will and testament, which was dated February 26, 1999. The will contained numerous deletions and added language handwritten by Lura. Paragraph III of the will states:
 

 I have three children now living; my son, Jerry Wayne Carpenter; my son, Bobby Dean Carpenter; and my daughter, Nancy Lynn Carpenter Dempsey. It is my specific intent that my deceased daughter, Sandra Gwyn Carpenter McSheffrey, and her daughter, Autumn Cosby,
 
 will
 
 will not inherit anything under my Last Will and Testament except as specified herein. Any references to my children shall mean my three living children or their issue.
 

 (Emphasis added).
 
 [1]
 
 In paragraph VII, Lura bequeathed a bedroom suite to another granddaughter, Tammy Maycock; however, she marked through a small portion of the sentence. This marking did not affect the above-stated bequest. Paragraphs VIII, IX, X, and XI were completely marked through, rendering them illegible. Finally, in paragraph XIII, Lura made another handwritten addition. Paragraph XIII reads:
 

 I will, devise and bequeath any real property, including my residence, in equal shares to my children, Jerry Wayne Carpenter, Bobby Dean Carpenter and Nancy Lynn Carpenter Dempsey. In order to accomplish this, it is my desire that my real property, including my residence, be sold and the net proceeds divided equally between Jerry Wayne Carpenter, Bobby Dean Carpenter and Nancy Lynn Carpenter Dempsey
 
 [and] Autumn Crosby.
 
 If one of my children wants the real property, then that child shall pay the fair market value as determined by a duly licensed appraiser, whose name will be drawn from three appraisers; and the proceeds will be distributed between the other two children.
 

 (Emphasis added).
 
 [2]
 

 ¶ 3. A Petition for Probate of Will, Letters Testamentary and Other Relief in the
 
 *1233
 
 Matter of the Estate of Lura Foster Carpenter was filed on June 20, 2007. The petition alleged that Lura’s entire estate was to be devised to her three living children: Jerry, Nancy, and Bobby. A decree admitting the will to probate and granting letters testamentary and other relief was entered on the same day. On October 23, 2007, Autumn, the daughter of Sandra Carpenter Cosby
 
 [3]
 
 who was Lura’s predeceased child, filed a petition to construe the will. The petition requested that the handwritten markings to Lura’s will be construed in such a manner that Autumn would inherit a child’s share. The executor, Bobby, filed an Answer to Petition to Construe Will, asserting that the handwritten deletions were a partial revocation of the will and that the handwritten additions were not legally effective. He later filed a motion for judgment on the pleadings pursuant to Mississippi Rule of Civil Procedure 12(c). Autumn filed an answer and a cross-motion for judgment on the pleadings requesting that the chancery court find that the will was partially revoked, including the paragraphs containing Lura’s handwritten additions; she argued that the result would be that Autumn would receive her deceased mother’s child’s share through the laws of intestacy.
 

 ¶ 4. On September 25, 2008, an agreed order of the court for partial disbursement and other relief settled any claims among Autumn, Jerry, and Nancy.
 
 [4]
 
 Accordingly, Jerry and Nancy are no longer parties to this action. After a hearing on the motions, the chancellor entered a judgment on December 22, 2008, in favor of Autumn, ruling that the handwritten deletions and amendments resulted in a total revocation of Lura’s will. Thus, Autumn was entitled to inherit a child’s share through intestacy. Bobby now appeals claiming that the changes to Lura’s will did not warrant a total revocation.
 

 STANDARD OF REVIEW
 

 ¶ 5. Our review of a chancellor’s decision is limited to an abuse of discretion standard.
 
 Deliman v. Thomas,
 
 16 So.3d 721, 724 (¶ 13) (Miss.Ct.App.2009) (citing
 
 Miller v. Pannell,
 
 815 So.2d 1117, 1119 (¶ 9) (Miss.2002)). We will only reverse if the chancellor’s findings “are manifestly wrong or clearly erroneous or the court has applied an incorrect legal standard.”
 
 Id.
 
 (citing
 
 In re Estate of Ladner v. Ladner,
 
 909 So.2d 1051, 1054 (¶ 6) (Miss.2004)). However, questions of law are reviewed de novo.
 
 Alexander v. Gross,
 
 996 So.2d 822, 823 (¶ 4) (Miss.Ct.App.2008) (citing
 
 Morgan v. West,
 
 812 So.2d 987, 990 (¶ 8) (Miss.2002)). In an appellate review of a contest to a will, our “ ‘polestar consideration’ ... is to give effect to the intent of the testator.”
 
 Costello v. Hall,
 
 506 So.2d 293, 297 (Miss.1987) (citations omitted).
 

 I. Whether the writings on Lura’s last will and testament, which were not witnessed pursuant to Mississippi Code Annotated section 91-5-1 (Rev. 2004), have any legal relevance.
 

 ¶ 6. Although Bobby addresses this issue last in his briefing, we find that this issue
 
 *1234
 
 must be discussed at the outset in order to analyze the remaining issues appropriately. Bobby claims that the handwritten additions to Lura’s will were invalid as they were not witnessed pursuant to Mississippi Code Annotated section 91-5-1 (Rev.2004). This section states that:
 

 Every person eighteen (18) years of age or older, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issuing out of them, or goods and chattels, and personal estate of any description whatever, provided such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction.
 
 Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.
 

 (Emphasis added). However, as Autumn accurately contends, this argument is “misplaced” as the chancellor found the markings to be a violation of the statute and, therefore, invalid. At the hearing, the chancellor stated that the items where Lura scratched out the entire paragraph were properly revoked; however, “[Lura’s] additions where she wrote in that Autumn is going to receive something, because she didn’t have two witnesses sign on those amendments, then they basically are not valid.”
 
 See, e.g., In re Will of Palmer v. Harpole,
 
 359 So.2d 752, 754 (Miss.1978) (provisions written on the testator’s will and codicil were invalid as they were not signed by the testator). Consequently, we find no error in the chancellor’s findings; thus, Bobby’s argument on this issue is without merit.
 

 II. Whether the chancellor erred in finding that Lura’s last will and testament was totally revoked instead of partially revoked.
 

 ¶ 7. The total or partial revocation of a will “by either cancellation or obliteration” is statutorily authorized under Mississippi Code Annotated section 91-5-3 (Rev.2004).
 
 Will of Palmer,
 
 359 So.2d at 753. “A testator who wishes to revoke a will may do so by either: (1) destroying, canceling, or obliterating the will, or (2) ‘by subsequent will, codicil, or declaration, in writing, made and executed.’ ”
 
 In re Estate of Woodfield,
 
 968 So.2d 421, 428 (¶ 16) (Miss.2007) (quoting Miss. Code Ann. § 91-5-3 (Rev.2004)). It is essential to the revocation that the testator “have the intent to revoke the will.”
 
 Id.
 
 (citing
 
 McCormack v. Warren,
 
 228 Miss. 617, 628, 89 So.2d 702, 706 (1956)). “The intent of the testatrix [is] a question of fact.”
 
 Estate of Lyles v. Howell,
 
 615 So.2d 1186, 1191 (Miss.1993).
 

 ¶ 8. Neither party disputes that Lura intended some sort of revocation; rather, the issue is the extent of the revocation. Bobby contends that the handwritten in-terlineations in Lura’s will are merely evidence of her intent to partially revoke those portions of the will, not a complete revocation of the will. While Bobby admits that Lura made the additions in paragraphs III and XIII presumably to amend her will, Bobby contends that those changes were ineffectual; as such, they did not result in a revocation of those portions. Therefore, he submits that the chancellor committed reversible error in revoking Lura’s will in toto.
 

 ¶ 9. The Mississippi Supreme Court has stated that the act of cancellation is “accomplished by the drawing of lines over or
 
 *1235
 
 across words with the intent to nullify them and the form and extent of the lines are totally unimportant as long as they are a physical token of the intent to revoke.”
 
 Estate of Lyles,
 
 615 So.2d at 1188 (quoting
 
 Will of Palmer,
 
 359 So.2d at 753). The parties agreed at the hearing on the motions that Lura intended to revoke all portions of paragraphs VIII, IX, X, and XI. Further, there appeared to be no issue with the partial revocation of paragraph VI. In fact, the record shows that Maycock had already received her bequest of the bedroom suite under the will. At the hearing on the motions for judgment on the pleadings, counsel for Autumn stated that it was not Autumn’s position that the revocation of those paragraphs necessarily resulted in a total revocation of the will. Rather, Autumn’s counsel argued that
 
 all
 
 of the paragraphs that contained interlin-eations
 
 and additions
 
 should be revoked, leaving Lura’s real property and some small portions of personal property
 
 [5]
 
 to descend intestate. However, as the chancellor noted, the will contained a residuary clause. Paragraph XV states:
 

 All the rest of my personal items and household contents may be divided between my children in equal shares. Any items other than the above mentioned items may be disposed of as necessary and the net proceeds divided as equally as possible among my surviving children, per stirpes.
 

 There was no mention of Autumn in this paragraph. Consequently, the chancellor was concerned that if she found that all of the amended and deleted paragraphs were revoked, then the undesignated property would not descend by intestate law. Rather, Lura’s real property and any remaining personal property would go to Bobby, Jerry, and Nancy under the residuary clause in paragraph XV.
 

 ¶ 10. The chancellor cited
 
 Estate of Lyles
 
 to support her finding of total revocation. In that case, the testatrix, Mrs. Lyles, left a will which originally devised 40 acres of her real property to Brodie Howell, a family friend, and 100 acres to her niece and closest remaining relative, Bennie Mothershed. However, when the will was found upon her death, the 40-acre devise to Howell had been scribbled out and the figure “100” in the latter part of the sentence had been marked out. Written above the “100” was the figure “140.” Further, Howell’s name had been written beside a later clause which contained a bequest of a certificate of deposit to a group of beneficiaries. However, these additions were not witnessed as required by statute; thus, they were ineffective. Applying the doctrine of dependent relative revocation, the chancellor held that the changes made were evidence of Mrs. Lyles’s intent to amend her will rather than to revoke it.
 
 Estate of Lyles,
 
 615 So.2d at 1188. On appeal, the Mississippi Supreme Court explained, in regard to the doctrine, that:
 

 [I]f the testator by codicil or physical act, revokes a portion of a prior testamentary instrument and makes a substituted disposition under a mistake of fact or of law with the result that the later disposition is invalid, the prior disposition is revived on the theory that had the testator not been mistaken in his beliefi,] he would not have revoked the original gift.
 

 Id.
 
 at 1190 (quoting
 
 Crosby v. Alton Ochsner Med. Foundation,
 
 276 So.2d 661, 666 (Miss.1973)). “The basis for the doctrine of dependent relative revocation ... is that
 
 *1236
 
 there was never any revocation of the earlier instrument, or real intention to revoke, because of a mental misconception of the effect of his act, on account of mistake, or ignorance, or some other error.”
 
 Crosby,
 
 276 So.2d at 666.
 

 ¶ 11. The supreme court in
 
 Estate of Lyles,
 
 615 So.2d at 1191, further stated that “dependent relative revocation is a rule of presumed intent rather than a substantive rule of law.” It also acknowledged that, at
 
 “the heart of the doctrine of dependent relative revocation is the idea that, given the option, the testator or testatrix would prefer the will as executed over intestacy. The wisdom of this concept is undeniable.” Id.
 
 at 1191 (emphasis added). Nevertheless, “the presumption embodied in the doctrine may be rebutted by circumstances.”
 
 Id.
 
 (citing
 
 Caine v. Barnwell,
 
 120 Miss. 209, 227, 82 So. 65, 66 (1919)). In
 
 Estate of Lyles,
 
 615 So.2d at 1191, the supreme court found that “the presumed intent embodied in the dependent relative revocation doctrine [was] rebutted by the specific circumstance that Mothershed [was] the sole heir-at-law of the testatrix.” Accordingly, considering the “peculiar” facts of that case, the supreme court found that a total revocation of the will produced the result that Mrs. Lyles intended when she made her changes.
 
 Id.
 
 Therefore, it held that the chancellor’s application of the doctrine of dependent relative revocation to Mrs. Lyles’s will was error.
 
 Id.
 

 ¶ 12. In the present ease, the chancellor seized upon the italicized language to find that the will was totally revoked in accordance with
 
 Estate of Lyles.
 
 We find this analysis misplaced. In
 
 Estate of Lyles,
 
 since the testatrix deleted the number of acres devised to both Howell and Moth-ershed, the effect of these cancellations was that the land passed by intestate succession because there was not a valid clause remaining in the will concerning the real property. In the case before us, however, when the cancellations are taken into account, there still exist both a valid devise of the land “in equal shares to my children, Jerry Wayne Carpenter, Bobby Dean Carpenter and Nancy Lynn Carpenter Dempsey” and a residuary clause reading, “[a]ny items other than the above mentioned items may be disposed of as necessary and the net proceeds divided as equally as possible among my surviving children, per stirpes.” The revocation in this case, therefore, cannot result in intestate succession.
 
 [6]
 
 The language in
 
 Estate of Lyles
 
 relied upon by the chancellor, while appearing broad, was, in fact, case specific. Accordingly, we find that the chancellor erred in her holding that Lura revoked her entire will.
 

 ¶ 13. Proper application of the doctrine of dependent relative revocation would only result in re-inserting the can-celled clauses, which might have left certain items of the estate to Autumn. As the general doctrine states: “[I]f the testator by ... physical act, revokes a portion of a prior testamentary instrument and
 
 *1237
 
 makes a substituted disposition under a mistake of fact or of law with the result that the later disposition is invalid, the prior disposition is revived[.]”
 
 Estate of Lyles,
 
 615 So.2d at 1190 (quoting
 
 Crosby,
 
 276 So.2d at 666). We do not agree with Bobby’s contention that any claim by Autumn as a beneficiary under the original will may not be revived under the doctrine of dependent relative revocation. As noted, since Lura’s additions to paragraphs III and XIII were not attested to by any witnesses, or by a holographic instrument, these changes were ineffectual.
 
 See
 
 Miss. Code Ann. § 91-5-1. It is not clear from the record whether the cancelled portions of the original will, paragraphs VIII through XI, devised any portion of Lura’s estate to Autumn. Paragraph VIII mentions a granddaughter, and paragraph XI contains a name that begins with an “A,” but for the most part, these paragraphs are illegible. However, paragraph III under the original will states that Autumn was not to inherit “except as specified herein,” suggesting that there was a specific bequest to Autumn contained in the deleted provisions. Regardless, it is apparent that Lura revoked those paragraphs under the mistaken assumption that Autumn would receive a devise under the invalid amendments to paragraphs III and XIII.
 

 ¶ 14. Accordingly, we remand this case to the chancellor to determine whether Autumn would have received any bequests under the deleted portions of the original will, which should be reinstated under a proper application of the doctrine of dependent relative revocation.
 

 ¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. MYERS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The italicized language represents Lura's handwritten addition to the paragraph.
 

 [2]
 

 . The italicized language represents Lura's handwritten addition to the paragraph.
 

 [3]
 

 . This Court notes that the name of Lura's deceased child, Sandra, is slightly different in paragraph III of her will. The record contains no explanation as to why; however, there appears to be no dispute that she is the same individual.
 

 [4]
 

 . Jerry and Nancy agreed to decrease their bequeathed share of one-third of the real estate devise so that Autumn might receive a one-fourth share of the proceeds from the sale of the real estate. The sale of Lura’s home netted proceeds of $148,607.52, less attorney’s fees of $2,365.12. One-third of the remaining amount is $47,795.75; one-fourth is $35,846.81. Therefore, Autumn has been awarded $23,897.88, two times the difference between the amounts. The remainder of the proceeds is being held by the court until the resolution of the proceedings.
 

 [5]
 

 . Paragraphs IV-VT of the will contained three bequests of small items of personal property that were not amended in any way.
 

 [6]
 

 .
 
 Further, as a result of the total revocation of Lura’s will, Autumn would receive one-fourth of the
 
 entire
 
 estate, an outcome that we find to be clearly inconsistent with both the original will and Lura’s handwritten changes. This is apparent when we look at ineffectual additions to paragraphs III and XIII, which express an intent for Autumn to inherit only a share of Lura's real property. Further, specific bequests of personal property to Lura’s three children and, in paragraph VI, a specific bequest of bedroom furniture to her granddaughter, Maycock, would be cancelled if the entire estate were to descend by intestate succession. Autumn would own one-fourth interest in each item of personal property in her grandmother’s estate. Furthermore, we find that the inclusion of a residuary clause in the will, which Lura left unaltered, bolsters the presumption against intestacy.